## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. _____

| | |
|---|---|
| JEAN SHEA BUDROW, } | |
| Plaintiff, } | |
| v. } | |
| JPMORGAN CHASE BANK, } | **COMPLAINT** |
| NATIOINAL ASSOCIATION (NA) } | |
| Defendant, } | |
| and } | |
| CHASE HOME FINANCE, LLC } | |
| Defendant } | **REQUEST FOR JURY** |
| and } | |
| CALIBER HOME LOANS, INC. } | |
| Defendant, } | |
| and, } | |
| U.S. BANK TRUST, N.A., AS } | |
| TRUSTEE  FOR LSF9 MASTER } | |
| PARTICIPATION TRUST, } | |
| Defendant, } | |
| and } | |
| SHELPOINT MORTGAGING SERVICING } | |
| Defendant, } | |
| and } | |
| NEWREZ, LLC dba } | |
| SHELLPOINT MORTGAGE SERVICING, } | |
| Defendant, } | |
| and } | |
| Morgan Stanley Mortgage Capital Holdings, LLC } | |
| Defendant } | |

## COMPLAINT AND JURY DEMAND

**I. PARTIES**

1.     *Plaintiff, Jean Shea Budrow,* ("Plaintiff" "Budrow"), resides at 209 Rice Avenue, Revere,

MA 02151. Budrow is the owner of the Property at 6900 Estero Blvd., Unit 303, Sand Caper

Condominium ("Condo Property"), Fort Myers Beach, Florida 33931

2.     Defendant, *JPMorgan Chase Bank, National Association (NA);*

On 11/03/2014, 'FDIC grant Mortgage to Chase Bank'. *'ASSIGNMENT OF MORTGAGE,*

*("Defendant" "Chase" "Chase Bank");* (recorded on 11/13/2014 at 12:50 PM, Lee County), this

'Assignment' was executed (and prepared) by Lonnie Wallace, Vice President of JP Morgan Chase

Bank, National Association, as Attorney In Fact for The Federal Deposit Insurance Corporation

('FDIC"), as Receiver of Washington Mutual Bank, F/K/A Washington Mutual Bank, FA, and that

the instrument was signed on behalf of the corporation (or Association), by authority from its board

of directors, and that he/she/they acknowledged the instrument to be the free at and deed of the

corporation (or association), Good and Valuable consideration, the sufficiency of which is, hereby

acknowledged, the undersigned. The FDIC, A Corporation organized and existing under an act of

Congress, whose address is 1601 Bryan Street, Dallas, TX 75201, and acting in its receivership

capacity as receiver of Washington Mutual Bank F/K/A Washington Mutual Bank, FA. ('WaMu")

(Assignor"), by these presents does convey, grant, transfer and set over the described Mortgage with

all interest secured thereby, all liens, and any rights due or to thereon to JPMorgan Chase Bank

National Association, Whose address is 700 Kansas Lane MC 8000, Monroe, LA 71203 (866)756-

8747,Its Successors and Assigns (Assignee). Recorded 11/13/2014 Lee County Clerk of Circuit

Court.

3.      *Defendant, Chase Home Finance, LLC,* principal place of Business is 1122 Quail Roost

Drive, Miami, FL 33157

4.      On September 25, 2008, the Federal Deposit Insurance Corporation ("FDIC"), receiver for

WaMu, sold substantially all assets and liabilities of WaMu to JPMorgan through a purchase and

assumption agreement ("PAA"). Section 3.1 of the PAA reads, in part, "[T]he Assuming Bank

hereby purchases from the receiver, and the Receiver hereby sells, assigns, transfers, conveys, and

delivers to the Assuming Bank, all right, title, and interest of the receiver in and to all of the assets

(real, personal and mixed, wherever located and however acquired) . . . of the Failed Bank....

Section 3.2 reads, in part, "All Assets of the Failed Bank subject to an 'option to purchase' by the

Assuming Bank shall be purchased for the amount . . . as specified on Schedule 3.2, except as otherwise may be provided herein." Section 3.3 reads, in part, "[T]he conveyance of all assets . . . purchased by the Assuming Bank under this agreement shall be made, as necessary, by Receiver's deed or Receiver's bill of sale." Section 6.2 obligates the FDIC to deliver assets, including loan documents, "as soon as practicable on or after the date of this Agreement."

The "Settlement Date" is defined as "the first Business Day immediately prior to the day which is one hundred eighty (180) days after Bank Closing, or such other date prior thereto as may be agreed upon by the Receiver and the Assuming Bank." Article X explains that as a condition precedent, the parties were subject to the Receiver "having received at or before the Bank Closing, evidence reasonably satisfactory to each of any necessary approval, waiver, or other action by any governmental authority . . . with respect to this Agreement." *Cruz v JPMorgan,* 1:16-CV-00602

5.      Defendant, *U.S. Bank Trust, N.A as Trustee for LSF9 Master Participation Trust* ('US Bank'). On August 28, 2014 US Bank bought Mortgage from Chase Bank. In a letter dated, 09/14/2014, Caliber Home Loans sent Plaintiff a, 'Notice of Sale of Ownership of Mortgage of Loan', that the prior owner (Chase Bank), has sold your loan to *U.S. Bank Trust, N.A as Trustee for LSF9 Master Participation Trust* on August 28, 2014. The assignment, sale or transfer of the Mortgage Loan does not affect any term or condition of the Mortgage Instruments or the servicing of your mortgage loan.

6.      Assignment of Mortgage on 11/03/2014, "Chase Bank grant Mortgage to US Bank Trust, NA as Trustee for LSF9 Master Participation Trust", (recorded on 11/13/2014 12:50 PM, Lee County).  The 'Assignment of Mortgage', executed by Lonnie Wallace, Vice President of JP Morgan Chase Bank, National Association, the instrument (Mortgage) was signed on behalf of the corporation (Association) by authority from its board of directors, and that he/she they acknowledge the instrument to be the free act and deed of the corporation (or association), and, for good and valuable consideration, the sufficiency of which is hereby acknowledged the undersigned

*JPMorgan Chase Bank, NA* ('Assignor'), by these presents does convey, grant, assign, transfer, and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to *U.S. Bank Trust, NA, As Trustee For LSF9 Master Participation Trust*, whose address is, 13801 Wireless Way, Oklahoma City, OK 73134 (800) 401-6587) Its Successors and Assigns, (Assignee). Said Mortgage was made to Jean Shea Budrow, and recorded in Official Records of the Clerk of the Circuit Court of Lee County, Florida, in Book 04077, page 3098, and/or Instrument # 5990354.

7.    A Caliber letter dated 06/29/2015 to Budrow stated that, "the current investor of the loan is U.S. Bank Trust, N.A. as trustee for LSF9 Master participation Trust located at 425 Walnut Street, Cincinnati, OH 450202 and the contact number is 1-800-401-6587". Account Number: 9803627513.

8.    Defendant *Caliber Home Loans, Inc., (*'Caliber') is Servicer to owner U.S. Bank Trust, N.A as Trustee for LSF9 Master Participation Trust, and is authorized to handle routine inquiries and requests regarding your loan and, if necessary, to inform us of your request and communicate to you any decision with respect to such request. 13801 Wireless Way, Oklahoma City, OK 73134.

9.    In a 07/10/2018 letter, *Caliber* Informed Plaintiff that, "...On August 1, 2018 the servicing of your mortgage loan will be transferred to *Shellpoint Mortgage Servicing* ("Shellpoint"), from Caliber Home Loans authorized to handle routine inquires and requests regarding your loan ..."

10.    Defendant, "*UMB Bank, National Association, as legal title trustee of TOCU Title Trust 2017-1"*, as of August 01, 2018, Servicer, *Shellpoint Mortgaging Servicing* began servicing this loan on or about August 01, 2018 and the principal business address, 5 Beattie Place, Suite 110, Greenville, SC 29601.

11.    Defendant, *"Morgan Stanley Mortgage Capital Holdings, LLC,"* on 06/28/2018, was owner and holds title to Plaintiff Loan, Principal Place of Business and address is 1558 Broadway, New York, NY 10036.

12.     Defendant, *Shellpoint Mortgaging Servicing, ("Shellpoint"),* as of 08/01/2018, is servicer for "UMB Bank, National Association, as legal title trustee of TOCU Title Trust 2017-1". Shellpoint began servicing this loan on or about 08/01/2018, and is responsible for ongoing administration of your loan, including receipt of legal notices, receipt and processing of payments, resolution of payment-related issues, and response to any other inquiries you may have regarding your loan. The new Owner hired Shellpoint to service your mortgage and to act as agent for the New Owner and the principal business address, 5 Beattie Place, Suite 110, Greenville, SC 29601.

13.     Defendant, *NewRez, LLC, Shellpoint Mortgaging Servicing, NMLS ID isis-13 ("Defendant" "NewRez").*

## II. JURISDICTION AND VENUE

14.     Jurisdiction is proper under 28 U.S.C. §1332 Diversity of Citizenship. And Venue is proper in this Court pursuant to 28 U.S.C. § 1331.

## III. FACTUAL BACKGROUND

15.     On September 24, 2003, a Security Instrument, consisting of a Mortgage, Exhibit A- Legal Description, Condominium Rider, Adjustable Rate Rider, and a 1-4 FAMILY Rider, Assignment of Rents, (Collectively, "Mortgage" "Mortgage Contract" "Loan Documents"), was agreed and signed between Borrower (Mortgagor), Jean Shea Budrow, and, Lender, (Mortgagee), Washington Mutual Bank, PA ("WaMu'), for property located at 6900 Estero BLVD. #303, Ft. Myers Beach, Florida 33931. ("Property")

16.     Jean Shea Budrow signed the Loan Documents in the State of Massachusetts and the County of Middlesex on September 24, 2003.

17.     The Promissory Note ("Note"), or debt evidenced by the Loan, dated September 24, 2003, states that Borrower owes Lender, ("WaMu"), Two Hundred Ninety-Four Thousand ad 00/100 ($294,300.00).

18.   At all times relevant hereto, Plaintiff owned and insured Property at 6900 Estero Blvd, Unit

303, Sand Caper, Fort Myers Beach, Florida 33931

19.   The Mortgage, Exhibit A- Legal Description:
"Unit No. 303 of the Sand Caper Condominium, a condominium community, according to
the Condominium Declaration…the above …described property is not now, nor has it ever
been, the homestead property of the Mortgagor…"("Property")

20.   The Mortgage, 'Condo Association, Condominium Covenants. B. Property Insurance' said:
'So long as the Owners Association, with a generally accepted insurance carrier, a "Master"
or "Blanket" policy on the Condominium Project which is satisfactory to Lender and which
provides insurance coverage in the amounts (including deductible levels), for the periods,
and against loss by fire, *hazards* included within the term "extended coverage," and any
other hazards, including, but not limited to, earthquakes and *floods,* from which the Lender
requires insurance, then: (i) Lender waives the provision in Section 3 Periodic Payment to
Lender of the yearly premium installments for property insurance on the Property; and (ii)
Borrower's obligation under Section 6 to maintain the property insurance coverage on the
Property is deemed satisfied to the extent that the required coverage is provided by the
Owners Association policy.'

21.   Mortgage, Uniform Covenants. Paragraph 15. Notices.
"All notices given by Borrower or Lender in connection with this Security Instrument must
be in writing…".

22.   Mortgage, Uniform Covenants. Paragraph 20.
"… If there is a change of the Loan Servicer, Borrower will be given written notice of the
change which will state the name and address of the new Loan Servicer, the address to
which payments should be made and any other information RESPA requires in connection
with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced
by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing
obligations to Borrower will remain with the Loan Servicer or be transferred to a  successor
Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the
Note Purchaser. ….Neither Borrower no Lender may commence, join, or be joined to any
judicial action (as either an individual litigant or the member  of  class) that arises from the
other party's actions pursuant to this Security Instrument or that the *other party has
breached any provision of, or any duty owed* by reason of, this Security Instrument, until
such Borrower or Lender has notified the other party (with such notice given in compliance
with the requirements of Section 14) of *such alleged breach* and afforded the other party
hereto a reasonable period after the giving of *such notice to take corrective  action. …*".

23.   Mortgage, Definitions, paragraph (O)"RESPA"
Means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation A (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the
same subject matter. As used in this Security Instrument, "RESPA" refers to all
requirements and restrictions that are imposed in regard to a "federally related mortgage

loan" even if the Loan dies not qualify as a "federally related mortgage Loan" under RESPA.

Paragraph (P) "Successor In Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

24.   Mortgage paragraph 5, Property Insurance. Borrower shall keep….Property insured against loss by fire, hazards …and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance…..If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Lender may purchase such insurance from or through any company acceptable to Lender including, without limitation, an affiliate of Lender, and shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment….If Lender requires Borrower acknowledges and agrees that Lender's affiliates may receive consideration for such purchase. Therefore, such coverage, Borrower shall promptly give the Lender all receipts of paid premiums and renewal notices.

25.   At all times material hereto, under the Contract, "Mortgage, Condominium Covenants. B. Property Insurance, Plaintiff had Flood and Hazard insurance, and (i) Lender waived the provision in Section 3, Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 6 to maintain the property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. ("Mortgage, Condominium Covenants").

26.   At all times material hereto, the Lender had knowledge that Plaintiff had flood and hazard under the 'Mortgage, Condominium Covenants,' and, Plaintiff had a separate Flood and Wind policy Insurance Policy with Citizens Property and Insurance Corporation, both provided to Lender at their request.

27.   At all times material, Plaintiff paid Washington Mutual and all successors in interest all monthly mortgage payments and Insurance beginning September 21, 2003.

28.     On September 25, 2008, FDIC, acting in its Receivership capacity as 'Receiver' for

Washington Mutual Bank, formerly known as Washington Mutual Bank, FA, Henderson, Nevada,

formerly known as Washington Mutual Bank, FA, Stockton, California (the "Institution" "WaMu"),

was closed by the Office of Thrift Supervision ("OTS") and the FDIC was appointed Receiver for

the Institution; and pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the Receiver, by operation of law,

succeeded to all of the rights, title, and interest of the Institution in and to all of the assets, including

without limitation, all real estate (including any leasehold interest and any interest in a

condominium or cooperative unit) of the Institution (collectively, the "Institution Assets") and all of

its liabilities ( collectively, the Institution Liabilities").

29.     Plaintiff never received a Written Notice, as required under the Mortgage Contract, that the

FDIC, acting in its receivership capacity as receiver of WaMu, (Assignor), conveyed, granted,

transferred or set over the described Mortgage with all interest secured thereby, all liens, and any

rights due or to thereon to Chase Bank.

30.     Chase Bank never sent Plaintiff a Written Notice, as required under the Mortgage Contract,

paragraph 20, that Chase Bank was the owner of Mortgage of Plaintiff.

31.     The only 'notice' Plaintiff received concerning WaMu was no longer was the lender or

servicer on Plaintiff Loan, was from an insert in the 11/02/09 Home Loan Statement, now called

Chase Home Loan Statement saying:

> 'Did you know', 'WaMu is "becoming" Chase, You'll now start to see the Chase name and
> logo on your statement. You'll continue to receive the great service you've come to expect.
> Continue to bank with us as you usually do. In the coming months, you'll begin to see the
> Chase name in your local branch, as we bring the power of Chase...'

32.     The 'notice' did not say Chase bought Plaintiff Mortgage or was the new lender or servicer,

just that WaMu is becoming Chase.

33.     Chase Bank, breached the Mortgage Contract under Paragraph 20, because Chase Bank

never gave written notice to Plaintiff either in 2008, when WaMu was closed and Chase took over

servicing, on 08/01/2014, when the Assignment from FDIC to Chase occurred.

34.     Not until 11/03/2014, did the FDIC, as Receiver for WaMu, make an 'Assignment of the Mortgage', and convey, grant, transfer and set over the 'Mortgage', with all interest secured thereby, all liens, and any rights due or to thereon to Chase Bank.

35.     On 11/03/14, the same date, at the same time, Chase Bank granted an Assignment of Mortgage to US Bank Trust, NA as Trustee for LSF9 Master Participation Trust" (US Bank Trust).

36.     Before the Assignment of Mortgage from Chase to, "U.S. Bank Trust, N.A. as trustee for LSF9 Master Participation Trust," on 11/03/2014; on 08/28/2014, Caliber notified Plaintiff that Chase Bank sold Loan and the New *Servicer is Caliber Home Loans, Inc.,* who is authorized to handle routine inquiries and requests regarding your loan and, if necessary, to inform us of your request and communicate to you any decision with respect to such request.

37.     Plaintiff never received a Written Notice, as required under the Mortgage Contract, from Chase Bank, that on 11/03/2014, Chase sold the Mortgage to U.S. Bank Trust.

38.     From September 2003 to 2009, for six years, Plaintiff paid her mortgage and insurance to WaMu.

39.     Before Plaintiff had notice that WaMu, on 09/25/2008, was closed by the Office of Thrift Supervision ("OTS") and the FDIC was appointed Receiver of WaMu, on June 09, 2009 Plaintiff received a letter on 'Washington Mutual' letterhead that her flood insurance was cancelled or expired, which was the first notice for insurance Plaintiff received since the Closing on September 2003.

40.     On or before 06/09/2009, WaMu had knowledge of the Condominium Rider in the Mortgage Contract, pertaining to Property Insurance…providing insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the

term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods…".

41.    In a 07/14/2009 Letter WaMu wrote if Plaintiff did not respond in 15 days Flood insurance will be obtained, and Plaintiff provided proof of Insurance to WaMu and received a letter dated 07/25/2009, "Thank you for providing us the proof of flood insurance, the lender placed flood coverage was stopped immediately and no charge to your account."

42.    But, on the same date, July 25, 2009, WaMu wrote Plaintiff that the evidence of hazard insurance does not cover perils of wind and hail (Wind Coverage), and they must have proof within '60 days' (September 25, 2009), or Washington Mutual will establish and impound /escrow in security instrument to pay annual premium of $13,840.41…'Washington Mutual Insurance services, Inc., a subsidiary of Washington Mutual Bank, may receive a commission, not more than 15% of the premium charge.

43.    On August 6, 2009, Plaintiff sent proof of 'Citizens Wind Insurance', naming "Washington Mutual Bank, FA", as First Mortgagee, for policy period 08/06/2009 to 08/06/2010 for "WINDSTORM OR HAIL".

44     However, on 09/05/2009 (20 days short of the 60 day limit), 'Washington Mutual' Home Loan Statement showed a charge of Insurance in the amount of '$13,840.41' on Statement.

45.    In a 09/29/2009 letter, WaMu wrote that the Citizen Policy did not cover *wind and hail and charged Plaintiff Loan and charged $13,840.41 to Escrow*. Plaintiff called and called to state the Citizen Policy was specifically a Wind Policy, and, the Condominium Rider covered hazard insurance and also covered Wind and hail, without a response from WaMu.

46.    The 01/02/2010 Chase Statement, showed an Outstanding Monthly Escrow Payment of $3,132.30 / month when Escrow should have been $433.36 / month as on September 5, 2010 statement, an Escrow balance of $11,474.84, without explanation or other written notice.

47.     The March 01, 2010 Statement showed Plaintiff paid Chase $6,673.74 of additional LPI, which Plaintiff did not owe, but paid to stop a default to her loan.

48.     The 2009-2010 Pay History showed: i) Chase detailed Transaction History: 09/24/2009 posted 7/1/2009 for $13,840.41, which did not show was refunded until eight months later on 3/1/2010 for $6,673.74, with Escrow Advance on 03/01/2010 for $1,668.80l; Escrow refund on 4/01/2010 for $7,166.67; In March/April 2010 was another charge to plaintiff of $6,346.06, without explanation or written notice.

49.     In a Breach of the Mortgage Contract, Chase Bank with knowledge Plaintiff had insurance, charged Plaintiff Insurance, and then did not refund Plaintiff until eight months after insurance was added. This active concealment increased Escrow and Loan balance causing higher payments and higher interest payments to Plaintiff and a higher Principal Balance due.

50.     The March 2010 Chase Statement, showed more insurance charged in the amount of $6,673.74 without notice or explanation. Despite Plaintiff's calls and calls, representatives only said Plaintiff has to pay the amount to be current. Plaintiff sent a check for $6,673.64 to try to keep her mortgage from going into arrears. Unfortunately it did not help.

51.     The new Lender of Plaintiff's Loan was notice to Plaintiff when Plaintiff received a 'Home Loan Statement', which revealed an Escrow Balance in the amount of '$11,474.8' without an explanation or an Escrow Statement, and a minimum monthly payment due in the amount of $4,873.21. Plaintiff called and called and called without a response.

52.     Between January and March 2010, Plaintiff spoke to multiple representatives at Chase Bank and FedEx a check in the amount of $6,346.06 to Chase Bank, while also sending proof of Wind and Hail Insurance to protect the Loan from default.

53.     In a March 04, 2010 Chase Bank sent an Escrow Statement showing an Escrow with an Escrow Shortage in the amount of $820.61. The County Tax was $4568.19 and Escrow was $380.68/ month. The escrow shortage monthly was $68.38 / month. The new Principal and Interest

was $1,740.91 and new monthly payment was $2,121.59 or $2,189.97. Chase never reimbursed Plaintiff for the forced-placed Wind and Hail Insurance.

54.     In a letter dated March 09, 2010, Chase Bank acknowledged Plaintiff's Proof of payment of Wind and Hail Insurance, but caveat wrote, "the lender-placed wind and hail policy we previously purchased on your behalf has been cancelled effective 7/22/09. You will only be charged the 'premium for the actual time' that the coverage that we purchased was in effect". Chase actively misled Plaintiff that she was not charged, but in 2010 wrote Chase did charge Loan, but refused to state the amount and the time period Chase charged Loan Lender-placed insurance (LPI). In a letter dated 3/12/10 Chase sent Plaintiff a check in the amount of $6,346.04 for 'overage refund.' (Chase charge for the forced-placed insurance was $13,840.41).

55.     In the May 2010 Chase Home Loan Statement Chase charged Plaintiff "*Insurance'* in the amount of *$13,840.41*", without any written notices or escrow analysis.

56.     In a letter dated June 10, 2010, Chase Bank (Chase Home Finance, LLC), wrote Plaintiff a "Form" Letter, 'Notice of Missing Flood Insurance", writing, since your secured property is a condominium and may be insured under a master flood insurance policy, please contact your Homeowners Association....". Chase Bank knows that Plaintiff has hazard Insurance because the Mortgage Condominium Rider states the Plaintiff is covered under the Condominium insurance.

57.     On June 22, 2010, Plaintiff sent Chase Bank a copy of Certificate of Property Insurance for periods, 06/09/2009 to 08/09/2010 and 06/09/2010 to 06/09/2011 for, 'Statewide Commercial Insurance for Insured Sand Caper Condominium Association for Hazard and Flood insurance' naming the Certificate Holder as "Chase Home Finance, LLC". On June 24, 2010, Chase Bank Acknowledged receipt of Proof of Insurance.

58.     In a letter dated 09/17/10 the terms of adjustable Mortgage changed based on 3.2% at $1,610.34, and principal balance of $270,567.26.

59.     Chase Bank letter dated January 28, 2011 'Form Insurance letter', asked Plaintiff for Wind Insurance.

60.     Plaintiff had previously provided Chase Bank with: (1) Hazard Policy from the Condo Association for period 12/05/2010-12/05/11 from Produce Gulfshore Insurance Inc. and Hail and (2) Certificate from Condo Association and Produce Statewide Commercial Insurance, Inc. for Flood insurance for period 06/09/2010-06/09/2011; (3) Wind Policy for period 08/06/2010 to 08/06/2011 from Citizens Property Insurance Corporation, dated 06/08/2010.

61.     In the 2011 Escrow Statement, Chase again charged Plaintiff $10,141.82 for Wind Insurance despite Chase had knowledge Plaintiff sent proof of Insurance, and showed an escrow shortage of $15,175.62. No written notice was sent Plaintiff explaining this charge before it was added.

62.     In a 05/31/2011 Chase Bank Annual Escrow Account Statement, the Total Escrow Shortage is $15,175.62, charging Plaintiff *$10,141.82 for Wind Insurance*, and county Tax in the amount of $3,996.30, without any explanation or reasonable basis to charge Wind Insurance.

63.     In 2011, Plaintiff provided Chase Bank with: (1) June 09, 2011, Flood Insurance Declaration from Producer Gulfshore Condo Association Flood Insurance from Hartford Insurance Company, for period 06/09/2011 to 06/09/2012; (2) Gulf Shore Insurance for The Sand Caper Condominium Hazard Insurance, Citizen Insurance, for period 12/05/2011 – 12/05/2012; (3) Hartford Flood Insurance for period 06/09/2011 – 06/09/2012.

64.     In a September 14, 2011 Annual Escrow Account Statement, Chase Bank charged Plaintiff *Insurance in her Escrow for additional $10,254.20* and *$4,617.39 for Flood* Insurance without any notice or explanation or reasonable basis, despite the Mortgage Condominium Rider providing HOV h Flood Insurance which was sent to Chase Bank.

65.     The 01/01/2011 Chase Bank Mortgage Loan Statement showed a late fee of $254.62, but no posting of Plaintiff last monthly payment which was on time.

66.     The 03/04/2011 Chase Bank Mortgage Loan Statement showed unpaid late charged in the amount of $335.14, and no indication other than Chase states, "We have a Suspense Funds account balance of $126.45, and amount due is $6,166.25, despite Plaintiff paying the monthly payment. The statement also showed a charge of *$10,141.82 for Wind Insurance.* And 'Deposits to Escrow' in the amount of $380.68, $548.24, $333.03, $4,838.94, and $666.04 for a total of $6,766.93, plus tax $3,996.30 of charges and no written explanation for reasonable basis for the charges.

67.     Plaintiff Monthly Mortgage payments, and Escrow payments, Plus fees and charges escalated as more and more LPI was added to Plaintiff Loan, with Defendant actively concealing how much LPI was added and concealed the interest added to the escrow and charges and fees added without notice and without a reasonable basis.

68.     The 04/05/2011 Chase Bank Mortgage Loan Statement showed Late charges $289.21, and suspense funds $2,232.58, and corporate advances $14.00, and *Escrow $10,488.85*, without any written explanation or reasonable basis for the charges.

69.     The 05/31/2011 Chase Bank Account Statement showed the new monthly payment at $4,053.24, with Escrow charges in the amount of $2,442.9 or Account Shortage in the amount of $15,176.62.

70.     The 08/12/2011 Chase Bank Monthly Mortgage Statement shows a new Escrow for *Flood Insurance charge of $4,616.39*, and late fees $611.27, and a monthly amount owed is $9,656.90, again charged to Loan without written notice to Plaintiff or a reasonable basis for the charge, as Defendant had proof of insurance.

71.     The 09/29/2011 Chase Bank Monthly Mortgage Statement 'states' an escrow refund of $4,617.39, but the deduction is not represented in any figures and there is no corporate fees, or late fees, or any fees are deducted.

72.     The 11/22/2011 Chase Bank Monthly Mortgage Statement shows $12,347.97 owed monthly.

73.    On 09/17/2011 Chase sent Plaintiff the new mortgage loan scheduled to be adjusted on

11/01/11 with the new monthly payment of a principal and interest in the amount of $1,489.56

based on interest rate of 3.153% and new principal balance of $259.44.

74.    Chase Bank Annual tax and interest statement for Year 2011 showed mortgage interest in

the amount of $5,220.28. This amount appears low because Plaintiff paid all payments and no

statements show the amount of interest actually paid each month.

75.    Caliber Home Loans sent Plaintiff two Customer Account Activity Statements in 2015 and

2016 for periods 06/01/2011 to 09/01/2011. The statements showed *$462 charged for Corporate*

*Advances,* never disclosed by Chase, and some refunds of Corp. Advances 'listed' but not deducted

as far as Plaintiff can calculate. And a charge of *$9,811.55 for Expense* advances. These fees and

charges were actively concealed from Plaintiff and never appeared on any Chase statements.

76.    Caliber also sent Plaintiff Customer Account Activity Statements for years 09/01/2011-

10/01/11 and from 05/01/17 to 01/01/2018 which showed a gap between 10/01/11 and 05/01/17 for

over six years without explanation. The Statements revealed that between 09/01/2011 to 10/01/11

the principal balance *remained at $257,907.58.*

77.    Of note, the Escrow charges on Statement post date on 02/16/2011, are $6,043.00, and post

date 01/10/11 in the amount of $333.03, and post date, 05/31/2011 in the amount of $17,795.36

Escrow Balance, and post date 12/01/17 in the amount of $4388.51 for county tax and multiple

dated in 2017 in the amount of $444.88.

78.    In a letter date 09/17/12 Chase Bank sent 2012 terms of adjustable Mortgage at new

principal and interest at $1,377.84 based on interest rate 3.0480% and principal balance of

$249,724,00.

79.    In a letter dated 05/14/2012, Chase Bank cancelled Plaintiff request for Loss Modification,

stating Plaintiff did not provide all documents necessary. Plaintiff produced multiple documents

over and over, and made multiple calls to correct any deficiency in the application.

80.     In 2012, Plaintiff sent Chase Bank" (1) Certificate of Liability Insurance from Producer Gulfshore Insurance for period 12/05/2012 – 12/05/2013 for The Sand Caper Hazard Insurance, flood and wind; (2) Flood Policy for period 06/09/2011 – 06/09/2012.

81.     In 2013, Chase Bank did not sent Plaintiff any Monthly Mortgage Statements or Escrow Statements, so Plaintiff could not tell what Chase was charging Plaintiff.

82.     In 2013, Plaintiff sent Chase: (1) proof of Certificate of Liability Insurance for hazard, flood and wind, from Producer Gulfshore Insurance for the Sand Caper Condominium for period 12/05/2013 to 12/05/2014, (2) Flood Policy for period 06/09/2013 to 06/09/2014.

83.     On January 28, 2013, Chase Bank, represented by Albertelli Law, and the Circuit Court of the Lee County Florida, Civil Action, sent a Summons to Plaintiff for notice of a lawsuit, Notice of Lis Pendens that Chase Bank filed a foreclosure action on Mortgage for unit 303 of the Sand Caper, 6900 Estero Blve, Fort Myers Beach, Florida, and also filed against two elderly renters in the condominium, who are neither related nor have any interest in the Property.

84.     Chase Complaint paragraph 10. Claims, "… *due and owing the principal sum of $263,431.29,* together with all sums that may be due for interest, taxes, insurance, escrow advances, and fees for inspecting property, filing fees, recording fees, title search, examination fee, service of process…allowed by the Court…". Also filed was a 'fill in the blanks verified complaint for foreclosure', also dated January 28, 2013, that *Plaintiff owed $273,826.22.* However, the 09/17/13 Chase Bank adjustable mortgage letter states the *principal balance is $240.722.33,* and the new rate is 3.043% and new P & I is $1,341.44. Three different amounts due? Chase produced no verification of the principal balance or escrow or fees, or any amount.

85.     Original Complaint contained one sentence stating in paragraph 3, "Plaintiff [Chase] is the holder of the Note which is endorsed in blank". However, Chase Bank did not attach a copy of the Note endorsed in blank. The Complaint does not provide a date that the "Note' was endorsed in Blank. There is no indication that the Note was the Original Note, which is required for Standing to

file a Foreclosure Complaint. The Original Note or the 'Note endorsed in Blank', and Original

Mortgage was not filed with either the Original Complaint or with the Amended Complaint.

86.     On January 28, 2013, the day Chase Bank filed the Foreclosure Complaint, Budrow asserts

Chase Bank did not have Standing to file a Foreclosure against Plaintiff.  The FDIC did not execute

an Assignment of Mortgage until 11/3/2014 and recorded on 11/14/2014 12:50 pm. Then, on

11/3/2014 and recorded on 11/14/2014 at 12:50 PM, Chase Bank Assigned the Mortgage to US

Bank Trust, NA as Trustee for LSF9 Master Participation Trust", with Loan Servicer Caliber. An

assignee of a mortgage has statutory standing to foreclose under Florida.S. §701.01.

87.     On January 30, 2013, Plaintiff was forced to hire an attorney, Roy Foxall, Esquire, at a high

cost, in the Florida area.  Plus Plaintiff had to spend money to travel and drive and fly, and rent cars,

to attend the Foreclosure court dates in Florida on multiple occasions to defend the foreclosure; Plus

Plaintiff could not rent her condominium for years for fear any renters would be hauled out at a

moment's notice and Plaintiff lost thousands of dollars. Chase Bank already named two elderly

renters as Defendants in this matter who have no relation to Plaintiff or the Condominium.

88.     In a M.G.L.c. 93A letter dated February 21, 2013, Plaintiff wrote to Chase Bank explaining

the unfair and false and deceptive charges for forced-placed insurance and fees and charges.

89.     An April 19, 2013 Chase Loan History from, 12/31/2003 to 04/19/2013, revealed multiple

fees and charges and forced-placed insurance, *never disclosed or revealed and concealed* to

Plaintiff.

For example:
09/24/2009 a charge $8,640.09 no notice and not on any statements.
11//12/2009 a charge for $4,568.19 no notice and never explained
09/24/2009 a charge for $13,840.41 no notice and never explained
03/09/2010 a charge for **$7,166.67** for hazard insurance,
02/18/2010 charge of **$6,733.74** for Hazard Insurance;
04/04/2011 an Escrow charge for **$8,809.76** with no explanation; allegedly a refund for **$10,141.82**
for Wind Insurance, but there is no breakdown or details,
06/28/2011 a charge for **$4,838.94** for Hazard Insurance; there appears to be a refund in the amount
of **$4,617.39** for Food Insurance, but again no details when or where it was refunded, if at all. Then
two months later,
08/24/2011 a charge for **$4,617.39** for Hazard Insurance, and again no details.

08/30/2011 a charge for **$5,303.78** for Hazard insurance.
11/13/2012 Escrow advance for *$3,414.33*, and no explanation.
03/13/2013 for **$1,960.00** with no explanation or details
**TOTAL: $79,252.51** - unexplained and illegitimate charges to Plaintiff Loan by
Chase Bank does not give any details what was and was not refunded, if any. Chase Bank charge
Plaintiff late fees for months and charges based on $79.252.51 which escrow was wrongly added
because Plaintiff provided proof of insurance for each forced-placed insurance charged. In addition,
Chase Bank knew that the Property was a condominium and the Condominium purchased hazard,
wind and flood insurance per the Mortgage.

90.     On May 03, 2013, Chase Bank attorney, Fitzhugh, Mariani, LLP wrote Plaintiff a letter, but

never mentioned the forced-placed insurance, and only wrote that Plaintiff failed to make payments.

Plaintiff made multiple calls to Chase and Fitzhugh law firm without a response from either.

91.     Plaintiff continued to attempt over and over and over and sent document after document to

Chase to get a Modification and to refinance her loan, and even paid to hire private companies over

five thousand dollars, The National Home Preservationists, to Modify the Loan.  Chase Bank

refused to respond.

92.     On 10/25/2013, Chase Bank filed an "Amended Verified Mortgage Foreclosure Complaint".

The Amended Complaint contained an attachment Exhibit A, Certification of Note Possession

signed by Alma Santos as, "Document Custodian of Albertelli Law," which stated, "I personally

reviewed the collateral file at 5404 Cypress Center Dr., Tampa, Fl, that was provided to Albertilli

Law for purposes of its representation of JP Morgan Chase Bank. ...I confirm that the collateral file

contained the original promissory note, and attached is correct copy of original promissory note...".

It is apparent that the Original Note was not filed with the Court either on January 28, 2013 or on

10/25/2013. There is no indication that on January 29, 2013, Plaintiff was in possession of the

"Original Promissory Note", or of a Note endorsed in Blank. The Custodian does note state the

Original Note had a Blank Endorsement.

93.     Plaintiff sent Chase Bank proof of Flood, Wind, Insurance for period 06/09/2014 –

06/09/2015 from Producer Gulfshore Insurance for Sand Caper Condominium, and Wind period

08/27/2014 – 09/27/2015, and Hazard and flood for period 12/05/2014 – 12/05/2015.

18

94.     On 02/18/2014, Chase Monthly Mortgage Statement showed a total payment due in the amount of $58,582.60; On 03/17/ 2014 Chase Bank Monthly Statement showed amount due as $60,222.00, and that foreclosure process has started; On 06/16/2014 Chase Bank Monthly Statement showed amount due as $65,143.24; and on 08/16/2014, the amount due was $68,856.09.

95.     In a letter dated September 15, 2014, Caliber Home Loans notified Plaintiff of "Notice of Sale of Ownership of Mortgage", that prior owner has sold *'ownership of mortgage'*, secured by principal swelling to *"LSF9 Master Participation Trust,"* ("Trust") on August 28, 2014. The assignment, sale or transfer of the mortgage loan does not affect any term or condition of the mortgage instruments or the servicing of your mortgage. "LSF9 Master Participation Trust," now owns the loan but is not the servicer of loan. The *servicer, Caliber Home Loans, Inc,* ("Caliber") acts on the new owner's behalf to handle the ongoing administration of your loan, including the collection of mortgage payments…".

96.     In a letter dated 09/16/14, Chase sent Plaintiff, "The servicing of your loan will transfer from Chase to Caliber Home Loans effective 10/1/2014…"  The Servicing of the Loan is being transferred, effective October 01, 2014.

97.     On October 07, 2014, Caliber sent Plaintiff a Loss Mitigation Package which Plaintiff completed another hardship modification application.

98.     In a letter dated October 08, 2014, Caliber sent Plaintiff, "…The transfer of servicing of your mortgage loan to Caliber will not affect any term or condition or your mortgage…".

99.     In an "Informational Statement," dated 10/14/2014, Caliber Home Loans, listed a 'Transaction Activity' showing charges for Pp-Drive By Inspection for 1-/06/2014 in the amount of $14, listed 22 times at $14.00 and 'Fcl Attorney Fees in the amount of $410, $410.00, $615.00, Fcl Title Fees $75,00 and $200.00; and Fcl Brokers Price Opinion  $78 five times and Fcl Notary Fees $1,960 and $14,00, with a "payment amount due $1,658.47, (Separate from Monthly Payments),

and an Escrow amount due of $7,252.44. Plaintiff never received a written notice for any of these charges, and No Explanation for any of the charges.

100.    The 10/14/2014, Caliber "Informational Statement", showed monthly payment was $1,658.47, and an Escrow balance of $7,252.44, and a list of fees and charges of Drive by Inspections, FCL Attorney Fees, Title Fees, Notary Fees, Brokers fees, for a total of $4,509.00.

101.    Plaintiff paid the $1,658.47. In a letter dated November 04, 2014, Caliber sent Plaintiff her check back writing, "…your payment being returned for…insufficient funds to cure the default…" Plaintiff called and called and applied for a loss mitigation and Caliber did not respond.

102.    Caliber sent Plaintiff an "outstanding Corporate Advance" in the amount of $7,846.40 for the period of 2011 when Chase was on the Loan. The 11/18/2014 Caliber "Informational Statement", the Payment amount due was $1,658.47. Again Plaintiff paid. The Escrow was in the amount of $11,102.01; also listed a 06/01/2011 Payment Reversal in the amount of $7,252.44. There was no explanation for this action; also listed 30 drive by inspections of the Property since 10/06/2014 for $14.00 each drive for a total of $420.00. The Property is a third floor corner unit in a Building; Caliber still had *not sent Plaintiff an Escrow Analysis* or an explanation of why Plaintiff check was returned.

103.    In a December 02, 2014 letter, Caliber wrote Plaintiff that, "….We requested documents necessary to proceed with your modification review, thank you for your prompt response in this matter. Additional documents have now been received and now your package is considered complete and ready for the next stage review by our underwriting team. We will review all documentation submitted to evaluate your eligibility, and make a decision within 30 days of the date of this letter…"

104.    In a December 10, 2014 letter Chase responded to Plaintiff letters dated on October 30, 2014 and November 13, 2014 and Plaintiff also sent to the Consumer Protection Bureau. "We don't show that you paid interest on your mortgage for the 2012 and 2013 tax years. You property was in active

foreclosure on November 30, 2011. We'll return any payment you send unless it is in full past –due amount… we transferred your loan to Caliber on October 1, 2014…'

105.    Chase Bank letter dated January 28, 2011- Form Insurance letter, asking for Wind Insurance

106.    Plaintiff had previously provided Chase Bank with: (1) Hazard Policy from the Condo Association for period 12/05/2010-12/05/11 from Produce Gulfshore Insurance Inc. and Hail and (2) Certificate from Condo Association and Produce Statewide Commercial Insurance, Inc. for Flood insurance for period 06/09/2010-06/09/2011; (3) Wind Policy for period 08/06/2010 to 08/06/2011 from Citizens Property Insurance Corporation, dated 06/08/2010.

107.    Plaintiff sent Caliber a Certificate of Liability Insurance for period 12/05/2015 – 12/06/2016 Hazard, Wind and Flood produced by Gulfshore Insurance for the Sand Caper Condominium. The Flood policy period was 06/09/2015 to 06/09/2016 with The Hartford.

108.    In 2015, Caliber only reported Mortgage Interest in the amount of $692.83, despite Plaintiff paying her monthly amount, and letter dated 02/12/2015, Caliber again returned Plaintiff payment.

109.    In a letter dated 03/20/2015 to Plaintiff, Chase Bank wrote fees of $5,339.00 have been assessed to her Loan, but Chase Bank did not itemize the fees. Chase enclosed the Assignment of the Mortgage dated 11/03/2014 of both Chase Bank and Caliber. Plaintiff questions why both Chase and Caliber Assignments of the Mortgage are both dated 11/3/2014 and are both signed by a Lonnie Wallace a Vice President of Chase Bank.

110.    In a letter dated April 29, 2015, Budrow wrote to Chase, the Consumer Financial Protection Bureau, and the Banking Commission Division of Banking, asking Chase for the forced-placed insurance policies.

111.    On May 5, 2015, Plaintiff Atty asked to continue the Foreclosure trial scheduled for May 6, 2015.

112.    In a letter dated May 6, 2015, Caliber wrote Budrow that Caliber was unable to process Budrow's request for a modification because Caliber needs more documents. The documents requested were sent to Caliber multiple times.

113.    On May 11, 2015, Budrow hired another attorney for $3600.00.

114.    In a letter dated June 16, 2015, Caliber wrote Plaintiff that, "We requested documents necessary to proceed with your modification…thank you for your [prompt response…documents have been received and your package is considered complete and ready for review by our underwriting team….".

115.    In a letter dated June 18, 2015, Caliber wrote Budrow a payoff for your mortgage us *$319,616.29. *In 2003, Budrow took out a loan for $294,300.00!

116.    In a letter dated June 29, 2015, Caliber wrote Plaintiff that this letter was a RESPA response to June 1, 2015 Plaintiff letter. And, wherein you stated Caliber has you illegally in foreclosure and you have sent five letters toward your request for a modification with many documents from November 2014 to February 2015 but Caliber denied your modification stating you did not produce enough documents….Caliber adheres to all federal and state law relating to the servicing of mortgage loans. Our records indicate the property was referred to foreclosure on November 29, 2011. …*a Judgment is scheduled for June 17, 2015*; however a foreclosure sale date is not currently scheduled….Our records indicate we received a complete loan modification package was received on June 10, 2015 and a modification review is pending. ….".

117.    In two letters, both dated October 19, 2015, and both with different content, Caliber wrote Plaintiff, "…regarding your request for a modification…Our records indicate that we are unable to process your request at this time as the documents indicated below have not been provided…". All documents requested have been sent over and over again to Caliber.

118.    On April 12, 2016, Plaintiff took the Deposition of a Caliber employee, Serge Alexis, a

default servicing officer (Depot. p.5), and he travels as a  participant for Caliber in depositions,

trials and mediations as a full time professional witness. (Depo. p. 7, 8).

119.    In 2016, Budrow hired a separate Loss mitigation specialists, The National Home

Preservationists and paid over $5,000.00 to help Plaintiff get assist to get a loss mitigation

agreement from Caliber.

120.    In April 19, 2016 email from Gulfshore Insurance, Chelsea Ison, wrote, "I have spoken to

JPMorgan Chase this morning and they said that *they have all of the documents needed for every*

*year they were your mortgage provider*."

121.    In 2016, Budrow sent Caliber proof of Hazard Insurance for flood, wind and hail.

122.    In September 2016, Budrow hired a third Attorney for $3750.00 to appear at the

Foreclosure in U.S. District Court.

123.    In a letter dated October 28, 2016, Caliber sent a letter to Plaintiff at a wrong address in

Tampa, Fl, instead of Plaintiff's Massachusetts address. The Caliber letter offered Plaintiff a 'Trial

Period Plan for Loss Mitigation Modification. Budrow had to pay Caliber $1,886,73 on 12/01/16;

01/10/2017; and 02/01/2017 to 'participate'.

124.    Caliber wrote Plaintiff the modification offer 'expires in 15 days'. The terms are that

Budrow owes $257,907.58, plus a deferred amount other than Principal in the amount of $74,482.61

to be paid in a *balloon payment* for a total of $332,390.19. Caliber refused to disclose how Caliber

arrived at the different numbers. When Budrow bought the property she paid $325,000 and put 20%

down or $65,000, and owed $260,000. Plaintiff made payments for over ten years. Now Caliber is

extorting $332,390.00 from Plaintiff. Plaintiff is at the mercy of Caliber or else go to a foreclosure

trial and lose the Property entirely. Plaintiff cannot get a loan anywhere because she is in

foreclosure. Plaintiff has no choice but to agree to the terms of Caliber's 'Loss Mitigation'. The

only entity the Loss Mitigation benefited was Caliber.

125.     In the 2016 tax interest form, Caliber only reported mortgage interest paid in the amount of $1,369.46, despite Plaintiff paying monthly mortgage payments.

126.     On the 2016 Mortgage Interest Statement Caliber reported to the IRS, Caliber paid a total of $24,171.39 in Escrow, but only listed the amount of $6,043.39 for forced-placed insurance and $4,149.94 in Taxes, and a beginning Escrow in the amount of $14,644.51.

127.     A Payment History for 07/29/2016 showed an insurance charge to escrow for $6,043.00 actively concealed to Plaintiff and never disclosed to Plaintiff.

128.     In 2017, Plaintiff sent Caliber proof of Hazard insurance for Flood, hail and wind.

129.     On January 12, 2017, Plaintiff appeared at a Hearing in the Circuit Court for Lee County, Florida on the Foreclosure with JPMorgan Chase Bank which was continued.

130.     In a January 12, 2017 Motion to Compel, Plaintiff requested JPMorgan respond to Interrogatory questions.

131.     In a letter dated 01/20/2017, Caliber wrote Budrow she completed the Trial Period Plan for a modification.

132.     In the Caliber 'Payment History Details Statement' dated 3/24/2017 to 03/31/2017, Caliber showed Escrow amounts charged Plaintiff were $17,795.36 and $10,383.71, but actively concealed to Plaintiff before this Payment History, plus multiple fees added, not concealed.

133.     In a 04.01.2017 Mortgage Statement, Caliber told Budrow amount due by 04.01.17 was $133,275.86

134.     On April 06, 2017, Plaintiff emailed Caliber asking if Plaintiff was approved for the modification.

135.     On May 18, 2017, Plaintiff mailed, certified mail, the seven page Loan Modification.

136.     In a letter dated 12/13/2017, Plaintiff sent Caliber a letter pertaining to her escrow. The taxes were only $4,388.51, but Plaintiff was being charged $444.88/ month x 12 = $5338.56, which is a difference of $950.00/ month. Caliber actively concealed the extra $950.00 / month to Plaintiff and

never disclosed the $950.00 charge on the Escrow Analysis when the Loan was modified which is required per law and Mortgage.

137.    The 2017 tax interest form 1098 show Budrow charged $4,388.51 for tax and $6,043.00 for Insurance, and again actively concealed to Plaintiff. Budrow never received notice of a charge for Insurance. Plaintiff gave Caliber Proof of Hazard Insurance for 2016-2017 and 2017-2018.

138.    In a letter dated June 05, 2017, Caliber asked Plaintiff for her homeowner's insurance policy, and on 06/10/2017, Plaintiff send both her insurance policies and proof of the Condominium insurance

139.    In a 06/07/2017 Annual Escrow Account Disclosure Statement, Caliber added $3,114.22 and $6,043.00 in forced-placed insurance and County Tax, despite proof of insurance to Caliber, Caliber's May 2017 Escrow, showed Plaintiff owed, *$17,795.36 in Escrow*. The Loss Mitigation only added money to Caliber's Pocket and Caliber continued adding LPI without notice and actively concealing the charges of LPI.

140.    On 01/29/2018, Plaintiff spoke to a Caliber agent, Amanda, ID #2545, Jessica ID 29475, Kelly Latham, Candy ID # 24984. No one could explain the High Escrow. No one called back. No one followed up.

141.    The Honorable Elizabeth Krier at the Circuit Court for Lee County Ordered Chase Bank's Motion to Dismiss Cause of Action on 06/19/2018.

142.    In a 06/27/2018 Escrow statement, Caliber continued to Escrow tax and Insurance, in the amount of $4,388.5 (divided by 12 = $365.71 is what escrow should have been), and the amount of $1,187.68 for insurance, which was actively concealed from Plaintiff. Despite this, Caliber charged Plaintiff $1,738.12 for an Escrow Shortage. Caliber wrote in the escrow the new escrow would be $589.72 / month or $224.01 / month more than the Tax cost or $2,688.12 extra in a year.  Plaintiff called and called to complain and was told the Escrow is not done until the first of the year.

143.    In the 2018 Escrow Statement, Caliber charged Plaintiff $1,187.68 for Insurance, with knowledge Plaintiff sent proof of insurance to Caliber, and actively concealed the charge for insurance to Plaintiff.

144.    In a June 11, 2018 Form letter, Caliber wrote 'Our records show that your flood insurance expired, …If you cannot respond in 45 days Caliber will be forced to obtain flood insurance.

145.    In a letter dated June 20, 2018, Plaintiff sent Caliber proof of a Flood and Hazard Insurance for period 12/05/2017 to 12/05/2018 from producer Gulfshore Insurance. The Flood Policy was with Hartford for period 06/09/2017 to 06/09/2018, and for 06/09/2018 – 06/09/2019.

146    In a letter dated June 20, 2018, Caliber wrote Plaintiff, "…We have receipt of your current insurance information. We have cancelled the lender –placed insurance 06/09/2017 to 06/09/2018 and letter effective 06/09/2018.

147.    In a 07/10/2018 letter, Caliber Informed Plaintiff, "On August 1, 2018 the servicing of your mortgage loan will be transferred to Shellpoint Mortgage Servicing ("Shellpoint"), from Caliber Home Loans…"

148.    In a letter dated 07/26/2018, Shellpoint sent Plaintiff, 'Notice of Sale of Ownership of Mortgage Loan'. …the prior owner of your loan sold your loan to the new owner on 06/28/2018…. As of 08/01/2018 your Servicer is Shellpoint Mortgage Servicing, responsible for ongoing administration of your loan, including receipt of legal notices, receipt and processing of payments, resolution of payment-related issues, and response to any other inquiries you may have regarding your loan…Your New Owner is "Morgan Stanley Mortgage Capital Holdings, LLC," address 1558 Broadway, New York, NY 10036….the new owner holds title to your loan. The new Owner has hired Shellpoint to service your mortgage and to act as agent for the New Owner. Shellpoint is authorized to handle routine inquires and requests regarding your loan.

149.    When Shellpoint began Servicing Plaintiff Loan, Shellpoint continued to charge Plaintiff an escrow in the amount of $510.54, which included a charge for both county tax and LPI.

148.    Taxes for year 2018 were $4296.08 divided by 12 = $358.00, but Escrow charge was $510.54 or $152.54 a month for LPI. Plaintiff called Shellpoint to speak to a representative. The representative told Plaintiff that there was nothing Shellpoint could do because the file came from Caliber with Escrow amounts and an escrow analysis would not be performed until January 2019. Shellpoint continued to charge Plaintiff the FPI.

150.    In a letter dated January 30, 2019, and June 29, 2019, and July 09. 2019 Plaintiff wrote Shellpoint concerning the LPI.

151.    Through many calls and letters and emails, and due diligence, Plaintiff learned that Shellpoint did not handle the insurance.  A company called Proctor Financial, Inc, 5225 Crooks Road, Troy, MI 48098 ('Proctor') handled the Insurance. In 2018, Plaintiff sent proof of insurance over four times.

152.    In a call with Proctor on June 28, 2019, Proctor asked again for proof of insurance. Plaintiff sent four times as of this date for 2018. Proctor told Plaintiff her Loan was placed on an automatic cycle to send out frequent letters asking for insurance, which was more like being on a treadmill trying to keep up with requests for insurance. Proctor advised she would remove loan from automatic cycle.

## IV. CAUSES OF ACTION
### FIRST CAUSE OF ACTION: BREACH OF CONTRACT: CHASE BANK

153.    Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through 144, as if delineated here in extenso.

154.    The Defendant was contractually bound to Plaintiff when Chase, in an insert in the 11/02/09 WaMu/Chase Home Loan Statement wrote, 'Did you know', 'WaMu is "becoming" Chase, You'll now start to see the Chase name and logo on your statement. You'll continue to receive the great

service you've come to expect. Continue to bank with us as you usually do. In the coming months,

you'll begin to see the Chase name in your local branch, as we bring the power of Chase...' and

Chase Bank instructed Plaintiff, on the Statement, to mail all mortgage payments to Chase at the

same address as WaMu. On 09/04/2014 the FDIC assigned the Mortgage to Chase Bank, but this

was never sent to Plaintiff in a written notice under Paragraph 15.

155.    Plaintiff mailed future mortgage payments to Chase Bank at the address on the Chase Home

Loan Statement.

156.    Defendant broke, or breached the Mortgage Contract by:

  A. Mortgage, paragraph 15 (Notice), paragraph 20 (Sale of Note; Change of Loan
     Servicer); Defendant Failed to provide proper notice to Plaintiff that Chase Bank
     was Assigned the Mortgage or sold the Mortgage, and was legally able to be the
     Loan Servicer on the Mortgage and collect Mortgage payments and refer Plaintiff
     to a judicial action of foreclosure and breached the Mortgage, paragraph 20. 'Sale
     of Note; change of Loan Servicer; Notice of Grievance. "....If there is a change of
     the Loan Servicer, Borrower will be given written notice of the change which will
     state the name and address of the new Loan Servicer, the address to which
     payments should be made and any other information RESPA requires in connection
     with a notice of transfer of servicing.
  B. Mortgage paragraph 15 (Notice), paragraph 20 (Sale of Note; Change of Loan
     Servicer); Plaintiff never received Written Notice, from Chase, as required, that in
     November 2009, Chase was given legal authority to collect mortgage payments or
     service the Mortgage, or given or bought legal title to the Mortgage on November
     03, 2014, when the FDIC assigned the Mortgage to Chase. The only notice Chase
     gave Plaintiff that Chase was collecting the Mortgage Payments was in an insert in
     a Monthly statement that, "Did you know', 'WaMu is "becoming" Chase..." No
     written notice, as required under the provisions of the Mortgage, was ever provided
     to Plaintiff that Chase was owner or bought or assigned the Mortgage. Defendant
     breached the Mortgage 'Written Notice' and 'Notice of Sale' and 'Change of Loan
     Servicer' provisions by not providing proper notice under the Mortgage.
  C. Mortgage paragraph 15 (Notice);paragraph 20, (Notice of Grievance); paragraph 5
     (Property Insurance) Defendant Breached, " Neither Borrower not Lender may
     commence, join, or be joined to any judicial action (as either an individual litigant
     or the member of a class) that arises from the other party's actions pursuant to this
     Security Instrument or that alleges that the other party has *breached any provision
     of, or any duty owed by reason of, this Security Instrument*, until such Borrower or
     *Lender has notified the other party* (with such *notice given in compliance* with the
     requirement is of Section 15 of such alleged breach and afforded the other party
     hereto a reasonable period after the giving of such notice to take corrective
     action....the notice of acceleration and opportunity to cure be given to Borrower
     pursuant to Section 22 and the notice of acceleration given to borrower pursuant to
     Section 18 shall be deemed to satisfy the notice and opportunity to take corrective
     action provisions of this Section 20.   Defendant breached the Mortgage and did not

provide Plaintiff a written notice of, (i) an Acceleration of the Note and Mortgage and, (ii) an addition of illegitimate or legitimate lender-placed insurance; and; (iii) did not provide Plaintiff an opportunity to take correction action before Defendant filed a judicial action for foreclosure.

D. Defendant owed a duty to give Plaintiff written notice of the acceleration of the Mortgage; addition of LPI and fees and charges; and filing of a judicial action of foreclosure to provide Plaintiff an opportunity to take corrective actions. No written notices were given to Plaintiff.

E. Defendant owed a 'duty" to Plaintiff under the Contract not to add LPI without a reasonable basis under RESPA. Despite Knowledge Plaintiff sent Defendant proof of insurance from both the Condominium hazard insurance, and Plaintiff private insurance upon request of Defendant, Defendant beached the Mortgage because the Defendant had knowledge Plaintiff had insurance, regardless, Defendant actively concealed that Defendant charged LPI premiums to Loan multiple times for multiple years and then after the Principal balance skyrocketed due the exorbitant amount of LPI on the Loan, Defendant filed for foreclosure to take the Property, and denied a Loan modification until Defendant agreed to a Loan Modification on their terms of

F. Defendant breached the Mortgage, 'Condo Association, Condominium Covenants. B. Property Insurance' said: 'So long as the Owners Association, with a generally accepted insurance carrier, a "Master" or "Blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, *hazards* included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and *floods,* from which the Lender requires insurance, then: (i) Lender waives the provision in Section 3 Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 6 to maintain the property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy;'

(1) Defendant had knowledge that the Mortgage under the Condominium master policy, the Condominium Insurance for Hazards and Flood, despite this knowledge, Defendant continued to actively conceal their charges to Plaintiff Loan of LPI without notice Plaintiff; (2) Despite Plaintiff mailing proof of insurance under paragraph 5, 'If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices...", to Defendant for both Condominium and Private insurance from Citizens and Insurance for contents, Defendants still actively concealed the exorbitant, out of control amounts of LPI they charged Plaintiff Loan;

G. Under the Mortgage, paragraph 15, Defendant owed Plaintiff a duty of a written notice of any and all additions of LPI. Defendants breached that duty when Defendant continued the foreclosure action to provide leverage for Caliber force Plaintiff into a sham Loss Mitigation without notice of any and all additions of LPI, Fees and Charges prepared a Loan Modification, not allowing any input and or changes by Plaintiff and providing only 15 days for Plaintiff to sign and mail to Defendant, which Loan 'Modification' in year 2017, contained a Principal Balance due of over $333,000.00 compared to the initial loan in 2003 for $294,000.00. After Plaintiff paid over 14 years of Loan payments to Defendant and, provided proof of Insurance to Defendant for 14 years, Defendants deceitfully and unfairly

and with active concealment added stole 14 years of mortgage payments and added over $75,000 of added LPI , fees and charges on Loan..

H.  Defendant breached the Mortgage by actively concealing the illegitimate Lender Placed Insurance added to the Loan, despite proof of insurance for Flood, Wind and Hail to Defendant when asked by Defendant;

I.  Chase breached Duty owed Plaintiff under the Mortgage by filing the Foreclosure based on artificially inflated amounts of Principal Balance and fraudulent charges of LPI and fees and charges, and actively concealed to Plaintiff the amounts of LPI and when LPI was charged, and all fraudulent charges for LPI, fees and charges exponentially increased the amount of the Principal Balance owed and outstanding.

J.  Chase Breached the Duty owed to Plaintiff under the Mortgage by filing the Foreclosure action in January 2013, without standing and proof of assignment of Mortgage, which was not assigned until November 2014.

K.  Defendant Breached Duty owed to Plaintiff

L.  Defendant Failed to promptly and reasonably adjust the claim and refund all LPI and collateral fees and charges;

M.  Defendant Failed to properly train and/or instruction its representatives and agents;

N.  Defendant Failed to provide uniform and/or standard guidelines and/or materials to adjusters and/or agents to properly evaluate claims;

O.  Any other acts or omissions to be shown at trial on the merits.

157.  As a result of Defendant's Acts and Conduct, Plaintiff has been damaged.

## SECOND CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION-CHASE BANK

158.  Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through

157, as if delineated here in extenso.

159.  Defendant further breached Mortgage contract and/or negligently misrepresented and or

actively concealed the following Defendant actions to Plaintiff:

A.  Failing to give Proper Written Notice of charges of illegitimate LPI without a reasonable basis;

B.  Actively Concealed multiple additions of LPI without a reasonable basis and with Knowledge Plaintiff had both Condominium and Private Insurance.

C.  Failing to Refund LPI to Plaintiff in a timely manner or not at all

D.  Failing to provide Plaintiff the ability to Modify Loan in a timely manner

E.  Failing to respond to verbal requests and correspondence in a timely manner;

F.  Failing to properly and timely adjust this case consistent with insurance industry standards;

G.  Failing to provide any reasonable basis for denying a loan modification and hardship modification on this claim;

H.  Failing to meet its duty owed to plaintiff to engage in good faith and fair dealings;

I.  Failed to account and mislead, and actively concealed every time LPI was illegitimately added, fees were added, and charges were added at the pure discretion of Defendant. An April 19, 2013 WaMu /Chase Loan History from, 12/31/2003

to 04/19/2013, revealed multiple fees and charges and forced-placed insurance, *Either not disclosed or* not *revealed and actively concealed* to Plaintiff for a Total of charges in the amount of $79,252.51 (¶85 Complaint)– unexplained and illegitimate charges to Plaintiff Loan, exponentially increasing or increasing quickly by large amounts the Principal Balance Plaintiff owed on the Loan.

J.  An example of unchecked charges is in Caliber's History of Account Optional Fee Charges for years 2011 – 2017 showing multiple fees for "pp-inspection exterior at $14 per inspection multiple times; FCL Broker price opinions at $78 multiple times and FCL attorney costs at $250 to $1400, and court fees at $151 to $1182.50, and corp advances $15 all charges are charged multiple times and never disclosed and actively concealed from  Plaintiff, but for Plaintiff asking for a Pay History.  In a 'Chase Detailed Transaction History' from 2010 to 2014, there are multiple charges and fees ranging from $14.00 to $6,673.74, mostly without any explanation and never revealed to Plaintiff and actively concealed to Plaintiff.

K.  Chase Bank failed give any details or written description what was and was not refunded.

L.  Failed to provide Plaintiff an accounting of how the Loan Modification numbers for LPI, principal balance, escrow, charges, fees, were calculated over $333,000.00 in year 2017, when in year 2003 the Loan balance was $294,000.00 and, Plaintiff paid the monthly Loan payments for eighteen years and, in 2017, Defendant unilaterally and arbitrarily without any accountability for the amount of the Loan Modification in 2017 arbitrarily charged Plaintiff with a Principal Balance due of $333,000.00?

M.  Chase breached Duty owed Plaintiff under the Mortgage by filing the Foreclosure based on artificially inflated amounts of Principal Balance and fraudulent charges of LPI and fees and charges, and actively concealed to Plaintiff the amounts of LPI and when LPI was charged, and all fraudulent charges for LPI, fees and charges exponentially increased the amount of the Principal Balance owed and outstanding.

N.  Chase Breached the Duty owed to Plaintiff under the Mortgage by filing the Foreclosure action in January 2013, without standing and proof of assignment of Mortgage, which was not assigned until November 2014.

O.  Defendants knowingly and for an improper purpose of financial gain, or by improper means induced and coerced Plaintiff, while Plaintiff was under stress of a foreclosure court case about to foreclose on Property, and or stay in present situation where Defendant arbitrarily, and without any accountability added LPI, fees and charges whenever and however Defendant wanted,  signed a Loan Modification under unilateral terms of Defendant

P.  Plaintiff was against a wall and was forced to enter into or continue a business relationship and mitigation or lose the Property to Foreclosure which was pending in Circuit of Lee County, Florida, or stay in original Loan and Defendant continue to add LPI without any accountability other than they can!

K.  Defendant applied coercion and undue influence and force by filing the foreclosure action and keeping the foreclosure action going which forced  Plaintiff to agree to the terms of the boiler plate unilateral Mitigation agreement giving Plaintiff with only '15 days to sign and deliver to Defendant," or lose Property to Foreclosure which was pending in Court filed by Chase Bank, or the other alternative to have Defendant keep adding more and more LPI and fees and charges, just because they could without any recourse, to Loan, forcing Plaintiff principal balance to rise higher and higher into debt, and closer  and closer to foreclosure  unless Plaintiff agreed to the terms of the Loss Mitigation within 15 days.

160.   Defendants autonomy in adding LPI, fees and charges Defendants decisions must be constrained and accounted to Plaintiff.

161.   As a result, Plaintiff suffered financial and emotional damage.

## THIRD CAUSE OF ACTION:  UNJUST ENRICHMENT
## CHASE BANK

162.   Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through - 161, as if delineated here in extenso.

163.   Defendant received a financial benefit when, at Defendant's discretion, and unaccountability, continually added fraudulent LPI, fees and charges, of over $75,000,00, on Plaintiff loan and actively concealed its actions.

164.   Defendant realized a financial gain from the LPI, fees and charges, but also wanted to foreclose on Plaintiff loan to gain the Property and more financial benefits.

165.   Despite realizing substantial premium from plaintiff Loan, Defendant has withheld the LPI proceeds owed to plaintiff for the payments of illegitimate LPI, and, Defendant filed foreclosure against the Property to gain more payments, that conferred on Defendant over $75,000.00 of illegitimate LPI, and irreparable harm to Plaintiff and breach in the bargaining process being one-sided to Defendant only and unfair to Plaintiff.

166.   Plaintiff contributed substantially to the Mortgage in 2002 which started at $194,300.00 and, for over 18 years Plaintiff paid Monthly payments to Defendant, and, without legitimate reasons Defendant added LPI, fees and charges, referred Loan to foreclosure, and then Chase denied Plaintiff a loan modification for years and years.

167.   Acceptance or retention by the Defendant of the valuable benefit under the circumstances is and would be inequitable without payment for its value to Plaintiff.

168.   Defendant had an advantage as a large financial institution, that has a measurable value, including the advantage of the foreclosure and costs of attorney fees and litigation what was

charged to Plaintiff, added LPI, and fees and charges, and a unilateral construction of the Contract for the benefit of the Defendant without Plaintiff being allowed to see how any of the calculations were made to prepare the Mitigation. Plaintiff paid her defense and litigation costs for Chase which were added to her Loan, but shown on the monthly statement and concealed by Chase.

169.    As a result of Defendant breach of its duties under the Mortgage, by not providing writing notice to Plaintiff, by illegitimately adding LPI despite knowledge Plaintiff Condominium and Plaintiff provided proof of insurance, there is an unjust enrichment of one party, the Defendant, and, unjust detriment to another party, the Plaintiff.

170.    The appropriate measure of damages should be an approximation of the value of the benefit Defendant received over 18 years of mortgage payments and interest paid, illegitimate LPI and fees and charges and cost of foreclosure and attorney fees and costs to Plaintiff to defend the foreclosure, and loss rent in her property not being able to rent for fear Defendants would take property and lock out any renters. Defendants already filed foreclosure unfairly against two renters Plaintiff had in unit.

171.    When a Defendant has received a benefit that is significantly greater than the Plaintiff's loss and justice so requires, "the Defendant may be under a duty to give the Plaintiff the amount by which he has been enriched." Restatement of Restitution § 1 cmt. e.

172.    'Although Massachusetts courts have not squarely considered the availability of profit disgorgement in an unjust enrichment action, we think it likely that they would approve of a disgorgement remedy in the present unjust enrichment context. *Demoulas*, 677 N.E.2d at 196

173.    Defendant has therefore been unjustly enriched at plaintiff's expense

174.    As a result Plaintiff is financially and emotionally damaged.

**FOURTH CAUSE OF ACTION:**
**IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.**
**CHASE BANK**

175.    Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through -

174, as if delineated here in extenso.

176.    Under the common law of contracts, the obligation of "good faith and fair dealing" is an

implied and inescapable term of every agreement. Per the Restatement (Second) of Contracts, §201,

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance

and its enforcement."

177.    Defendant had a duty under the Mortgage Contract to be fair to the purpose and terms of the

Mortgage Contract and not violate the "spirit" of the Contract, and compel fairness.

178.    Defendant actively concealed adding LPI, fees and charges, in excessive high premiums,

multiple times a year for multiple years, without a reasonable basis, and with knowledge the

Mortgage Condominium paragraph provided for hazard and flood insurance and, Plaintiff sent proof

of both Condominium and private insurance to Defendant when requested.

179.    At all material times, Defendant negligently and in bad faith failed to refund Plaintiff's Loan

of illegitimate LPI Defendant charged to Plaintiff Loan.

180.     At all material times, Chase negligently, and in bad faith, failed to fairly prepare and

negotiate a fair Loss Mitigation agreement with Plaintiff.

181.    Defendant negligently, and in bad faith, failed to speak to Plaintiff about the LPI.

182.    Defendant refused to speak to Plaintiff about the foreclosure and did not provide Plaintiff

with a written notice to correct foreclosure, as required under the Mortgage, forcing Plaintiff to pay

for attorneys to defend her in the foreclosure, and for Plaintiff to pay for travel from Massachusetts

to Florida multiple times to appear in Court, and for Plaintiff to be in a constant state of emotional

distress over the foreclosure and losing her Property, and distressing over Defendant continually

adding LPI and fees and charges without written notice, all which increased her Monthly payment and the principal balance,  and despite knowledge Defendant knew Plaintiff had insurance.

183.    Defendant failed to negotiate in good faith with the Loss Mitigation denied Plaintiff Loss mitigation.

184.    Defendant failed to provide Plaintiff with foreclosure alternatives as required by the Mortgage;

185.    Defendant "acted with . . . dishonest purpose or conscious wrongdoing necessary for a finding of bad faith or unfair dealing." *Schultz v. Rhode Island Hosp. Trust Nat'l Bank, N.A.*, 94 F.3d 721, 730 (1st Cir. 1996).

186.    "   the challenged conduct [of Defendant] did not conform to the parties' reasonable understanding of performance obligation, as reflected in the overall spirit of the bargain," *Speakman v. Allmerica Financial Life Ins.*, 367 F. Supp. 2d 122, 132 (D.Mass. 2005).

187.    Defendant breached the terms of the Mortgage Contract as described in Cause of Action I, and did not act in any way to correct their errors.

188.    Defendant denied to agree to a Loss Mitigation and filed for foreclosure based on fraudulent documents of false and misleading charges for LPI and fees and charges, which set Plaintiff up to fail and put her at heightened risk of sale of her Property and emotional distress.

189.    Defendant abused the modification and foreclosure process so deceive Plaintiff as to gain an unscrupulous advantage over Plaintiff to foreclose and sell Property.

190.    As a result of its misconduct, Defendant is liable to plaintiff for all damages occasioned by its misconduct, specific and general, as well as attorneys' fees, costs, interests.

191.    As a result of Defendants actions, Plaintiff was financially and emotionally damaged.

**FIFTH CAUSE OF ACTION**
**FRAUD**
**CHASE BANK**

192.    Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through -

191, as if delineated here in extenso.

193.    Plaintiff asserts a claim for common law fraud arising out of Chase Bank's' misstatements

and actively concealed actions of Chase Bank by:

> (i) charging Loan with illegitimate and fraudulent LPI despite Plaintiff providing proof of Private hazard and Wind Insurance and with the Condominium Hazard insurance, also a Provision in the Mortgage that the Condominium has hazard and flood insurance for Plaintiff property;
> (ii) charging Loan with extravagant fees and charges and actively concealed the fees and charges  to Plaintiff to prevent Plaintiff from discovering the illegal and fraudulent fees and charges
> (iii) Exponentially increasing Plaintiff Monthly Payments and Principal balance with the concealed illegitimate and fraudulent LPI, fees and charges,
> (iv) illegally referring Plaintiff loan to foreclosure and filing foreclosure in 2013, when Defendant did not have an Assignment of the Mortgage until November 2014, after Defendant filed the foreclosure, and, Defendant  never provided Plaintiff a written notice of the Assignment of Mortgage as required by the Mortgage paragraph 15 and 20 until 2015;
> (v) under Mortgage paragraph 20 and 15, Lender may not commence, join, … to any judicial action that arises from the other party's actions pursuant to this Security Instrument or alleges that the other party *has breached any provision of, or any duty owed* by reason of this Security Instrument, until such Borrower or Lender has notified the other party with such notice of compliance with the requirements of Section 15 [notice in writing]  of such alleged breach to take corrective action. Defendant breached the Mortgage as described in Plaintiff First Cause of Action Breach of Contract, Defendant further breached the Mortgage by filing the judicial action for foreclosure without an Assignment of Title, and actively concealing to Plaintiff that Defendant therefore did not have did not have an Assignment of Mortgage and Standing to file the foreclosure.
> (vi) Chase breached Duty owed Plaintiff under the Mortgage by filing the Foreclosure based on artificially inflated amounts of Principal Balance and fraudulent charges of LPI and fees and charges, and actively concealed to Plaintiff the amounts of LPI and when LPI was charged, and all fraudulent charges for LPI, fees and charges exponentially increased the amount of the Principal Balance owed and outstanding

194.    Plaintiff paid her monthly mortgage payment from 2003 to date to Defendant.

195.    Defendant, under the Mortgage Contract paragraph 5, has a legal right, "If Borrower fails to

maintain any of the coverages described above, Lender may obtain insurance coverage."

196.    Defendant is also aware under the Mortgage Contract that Condo Association,

Condominium Covenants. B. Property Insurance' said:  'So long as the Owners Association, with a

generally accepted insurance carrier, a "Master" or "Blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, *hazards* included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and *floods,* from which the Lender requires insurance, then: (i) Lender waives the provision in Section 3 Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 6 to maintain the property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.'

197.   Defendant is also aware that the Mortgage paragraph 20, Notice of Grievance, "Neither Borrower nor Lender may commence, join , or be joined to any judicial action that arises from the other party's actions pursuant to this Security  Instrument or alleges that the other party *has breached any provision of, or any duty owed* by reason of this Security Instrument, until such Borrower or Lender has notified the other party with such notice of compliance with the requirements of Section 15 [notice in writing]  of such alleged breach to take corrective action, but actively misled Plaintiff respecting the Plaintiff's cause of actions in Fraud.

198.   Defendant owed a duty under the Mortgage Contract not to breach the Mortgage Contract, and if Defendant did breach the Mortgage, Defendant was required to notify the Plaintiff in writing and take corrective action.

199.   Defendant breached the Mortgage and did not provide Plaintiff in writing of the breaches as described above, and did not take any corrective action to Plaintiff.

200.   Plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts. Plaintiff called and called Defendant's representatives and her calls were disconnected, or transferred or put on indefinite hold. Plaintiff asked for Payment Histories because she was in the dark why her monthly mortgage payments were exponentially increasing as

was her Principal balance.  Defendant gave Plaintiff either no information or misinformation and actively concealed their actions. The monthly mortgage statements did not disclose all of the LPI illegitimate added or the fees and charges for foreclosure and attorney fees and drive by inspection fees, and more.

201.    Plaintiff felt pressured to enter into the Loss mitigation transaction that ultimately benefits the bank, and the bank used inaccurate information, and fraudulently concealed relevant information, to achieve this objective.

202.    Chase Bank induced Plaintiff in the transaction and operated under fraudulent conduct with a large degree of benefit accruing to the bank of which Plaintiff was unaware. The *Sallee* court reasoned that where a party to a contract knows that the other is relying on him to furnish all material facts, the duty is on that party to refrain from concealing such facts. *Sallee v. Fort Knox Nat'l Bank, N.A Sallee*   75 Ohio St.3d 441, 662 N.E.2d 1074 (1996),

203.    Defendant's actions prevented Plaintiff from recognizing the validity of Plaintiff's claims. Defendant did not give Plaintiff written notice of LPI and fees and charges and Plaintiff relied on Defendant's concealment in thinking Plaintiff did not have a cause of action.

204.     As a result, Plaintiff suffered financial and emotional damages.

**SIXTH CAUSE OF ACTION – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CHASE BANK**

205.    Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through - 204, as if delineated here in extenso.

206.    Plaintiff asserts a claim for common law negligent infliction of emotional distress arising out of Defendants' actions. Below are facts to support Plaintiff's claim against Defendant.

(i)   misstatements and actively concealed actions of charging Loan with LPI despite Plaintiff providing proof of the Condominium Hazard insurance and Private insurance
(ii)  misstatements and actively concealed actions of addition of LPI, fees and charges, and excessive principal balance Defendant further breached Mortgage contract and/or negligently misrepresented and or actively concealed the following Defendant actions to Plaintiff:
(iii) Failing to give Proper Written Notice of charges of illegitimate LPI without a

Reasonable basis;

(iv) Actively Concealing addition of LPI without a reasonable basis and with knowledge Plaintiff had both Condominium and Private Insurance.

(v) Failing to Refund LPI to Plaintiff in a timely manner or not at all

(vi) Failing to provide Plaintiff the ability to Modify Loan in a timely manner

(vii) Failing to respond to verbal requests and correspondence in a timely manner and placing Plaintiff on extended lengthy holds on the telephone, and transferring Plaintiff over and over to different departments, and 'disconnecting' Plaintiff's calls;

(viii) Failing to properly and timely adjust this case consistent with insurance industry standards;

(ix) Failing to provide any reasonable basis for denying a loan modification and hardship modification on this claim;

(x) Failing to meet its duty owed to plaintiff to engage in good faith and fair dealings;

(xi) Failed to account and mislead, and actively concealed every time LPI was illegitimately added, fees were added, and charges were added at the pure discretion of Defendant. An April 19, 2013 WaMu /Chase Loan History from, 12/31/2003 to 04/19/2013, revealed multiple fees and charges and forced-placed insurance, *Either not disclosed or* not *revealed and actively concealed* to Plaintiff for a Total of charges in the amount of $79,252.51 (¶85 Complaint) – unexplained and illegitimate charges to Plaintiff Loan, exponentially increasing or increasing quickly by large amounts the Principal Balance Plaintiff owed on the Loan.

(xii) An example of unchecked charges is in Caliber's History of Account Optional Fee Charges for years 2011 – 2017 showing multiple fees for "pp-inspection exterior at $14 per inspection multiple times; FCL Broker price opinions at $78 multiple times and FCL attorney costs at $250 to $1400, and court fees at $151 to $1182.50, and corp advances $15 all charges are charged multiple times and never disclosed  and actively concealed from  Plaintiff, but for Plaintiff asking for a Pay History.  In a 'Chase Detailed Transaction History' from 2010 to 2014, there are multiple charges and fees ranging from $14.00 to $6,673.74, mostly without any explanation and never reavealed to Plaintiff and actively concealed to Plaintiff.

(xiii) Chase Bank failed give any details or written description what was and was not refunded.

(xiv) Failed to provide Plaintiff an accounting of how the Loan Modification numbers for LPI, principal balance, escrow, charges, fees, were calculated over $333,000.00 in year 2017, when in year 2003 the Loan balance was $294,000.00 and, Plaintiff paid the monthly Loan payments for eighteen years and, in 2017, Defendant unilaterally and arbitrarily without any accountability for the amount of the Principal Balance owed at the filing of Foreclosure arbitrarily charged Plaintiff with a Principal Balance due ofover $273,000.00.

(xv) Defendants knowingly and for an improper purpose of financial gain, or by improper means induced and coerced Plaintiff, while Plaintiff was under emotional distress of a foreclosure court case about to foreclose on Property, and or stay in present situation where Defendant arbitrarily, and without any accountability added LPI, fees and charges whenever and however Defendant wanted,  signed a Loan Modification under unilateral terms of Defendant

(xvi) Plaintiff was against a wall and was forced to enter into or continue a business relationship and mitigation or lose the Property to Foreclosure which was pending in Circuit of Lee County, Florida, or stay in original Loan and Defendant continue to add LPI without any accountability other than they can!

207.    Plaintiff felt pressured to enter into the Loss mitigation transactions that ultimately benefits the bank, and the bank used inaccurate information, and fraudulently concealed relevant information, to achieve this objective.

208    Plaintiff was emotionally distressed over all of the actions by Defendant as it concerns the Loan and filing of the foreclosure and added pressures and cost of litigation and traveling.

209.    Defendants autonomy and fraudulent actions and decisions of active concealment and misleading Plaintiff and providing misinformation or no information, and adding illegitimate LPI, and charges and filing foreclosure, must be constrained and accounted to Plaintiff.

210.    As a result, Plaintiff suffered financial and emotional damage.

## SIXTH CAUSE OF ACTION- ACCOUNTING
## CHASE BANK

211.    Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through - 210, as if delineated here in extenso.

212.    Plaintiff asserts a cause of action for an accounting of any and all transactions on the Loan from September 24, 2003 to date.

213.  Under Mississippi law, a plaintiff is entitled to an accounting if she can show: (1) the existence of a fiduciary or trust relationship; (2) the complicated character of the accounts; (3) the need of discovery, *Re/Max Real Estate Partners, Inc. v. Lindsley*, 840 So.2d 709, 712 (Miss. 2003) (citing *Henry v. Donovan*, 114 So. 482, 484 (Miss. 1927)).

214.    Plaintiff asserts that Defendant had a fiduciary relationship and duty to the Plaintiff under both the: (i) Mortgage, paragraph 20,
"Neither Borrower nor Lender may commence, join, or be joined to any judicial action that arises from the other party's actions pursuant to this Security Instrument or alleges that the other party *has breached any provision of, or any duty owed* by reason of this Security Instrument, until such Borrower or Lender has notified the other party with such notice of compliance with the requirements of Section 15 [notice in writing]  of such alleged breach to take corrective action, but actively misled Plaintiff respecting the Plaintiff's cause of actions in Fraud; and
(ii) Common law, the Florida court in *Barnett*, held that the special circumstances in this case created a *fiduciary relationship* between the customer and the bank, and the bank's failure to disclose this pertinent information constituted a breach of *that fiduciary duty*.  The

court reasoned that "where a bank having actual knowledge of fraud being perpetrated upon a customer, enters into a transaction with that customer in furtherance of the fraud," it could be held accountable for the resulting loss to the customer. Thus, the fraudulent conduct was the bank's withholding of information about the company's check kiting scheme, and the benefit was that the bank received its own loan proceeds check from the company. *Barnett Bank of West Florida v. Hooper, Barnett Bank of West Florida v. Hooper,* 474 So. 2d 1253.

215. Similarly, the 6th circuit held that the bank was liable for fraudulent

concealment. Specifically, the fraudulent conduct was based on the notion that once a bank officer

voluntarily provided information to the purchaser regarding the company's creditworthiness, the

officer also had a duty to disclose the information pertaining to the company's financial

instability. The bank benefited by its fraudulent conduct because the down payment on the

machinery was used by the company to reduce its debt to the bank. *Central States Stamping Co. v.*

*Terminal Equipment Co.,* 727 F.2d 1405 (6th Cir. Nos. 82-3166 and 82-3206).

216. "The *Sallee* case held that a bank may be held liable even in the absence of a *fiduciary*

*relationship* when the customer, usually pressured to enter into a transaction that ultimately benefits

the bank, and the bank uses inaccurate information, or fraudulently conceals relevant information,

to achieve this objective. PNC bank induced Plaintiff in the transaction and operated under

fraudulent conduct with a large degree of benefit accruing to the bank of which Plaintiff is unaware.

The *Sallee* court reasoned that where a party to a contract knows that the other is relying on him to

furnish all material facts, the duty is on that party to refrain from concealing such facts. In *Sallee,*

the bank acted fraudulently by failing to disclose the prior appraisals, which would have raised the

question of the validity of the final appraisal. And unbeknownst to the customer, the bank received

a benefit from the transaction because the sale of the Laundromat would help the bank by closing on

a nonperforming loan that was under secured, and also because the business would sell for more

than what it was worth.[18] As the *Sallee* case demonstrates, a bank may be held liable even in the

absence of a fiduciary relationship." *Sallee v. Fort Knox Nat'l Bank, N.A Sallee*  75 Ohio St.3d 441,

662 N.E.2d 1074 (1996);

217.    Plaintiff asserts that Chase Bank and Plaintiff had a fiduciary relationship and duty under the

Mortgage and under the cases sited. As a result of Chase Bank's failure to disclose pertinent

information pertaining to the illegitimate charges of LPI and fees and charges, despite having actual

knowledge Plaintiff had private insurance and Condominium flood and hazard insurance, and filed

a foreclosure action based on their fraudulent actions, and denied a hardship applications for Loss

Mitigation after Plaintiff submitted multiple document to Chase Bank for constituted a breach of

*fiduciary duty.*  Chase Bank had actual knowledge of fraud being perpetrated upon Plaintiff, and

entered into transactions with Plaintiff in furtherance of the fraud. Chase Bank should be held

accountable for the resulting loss to Plaintiff.  The fraudulent conduct was the bank's withholding

of information and providing misinformation and actively concealing illegitimate addition of LPI,

fees and charges despite knowledge of insurance, which added LPI fees and charges increased

Plaintiff monthly payments and principal balance, and Defendant filed foreclosure based on their

fraudulent actions that Chase Bank concealed from Plaintiff.  The benefit was that the bank received

higher loan proceeds and fees and charges.

218.    Plaintiff further asserts that due to the complicated character of the accounts an accounting

of the Loan is necessary.  Plaintiff entered into the Mortgage in September 24, 2003 with WaMu. In

2009, Chase Bank began sending Plaintiff Mortgage Statements. Chase Bank has added multiple

charges for LPI, fees, and charges, and misapplied funds, and not applied mortgage payments, and

other accounting functions. The pay histories Chase Bank sent to Plaintiff are complicated and

difficult to understand by a lay person. An accountant is necessary to untangle the complicated

Loan history.

219.    Loans are complicated and some Loan documents are lengthy. Lenders and servicers use

negotiated or technical defaults as a way of acquiring the property for their own portfolio or

generating millions of dollars in default interest and fees. There are many bad faith foreclosures or

accelerated demands and an alleged default may not be material.

220.    Plaintiff asserts the need of Accounting discovery is extremely necessary due the active

concealments of Defendant as it pertains to the Loan. In 2003, Plaintiff principal balance on the

Loan was $294,300.00. Plaintiff paid monthly payments for 18 years. In 2017, Defendant now

contends Plaintiff owes over $333,000.00. It is extremely important Plaintiff Loan have an expert

accountant scrutinize Defendant books pertaining to Plaintiff Loan to find why Defendant asserts

Plaintiff owes more now than in 2003 after Plaintiff paid monthly payments. Also, Plaintiff

contends that Chase Bank filed for foreclosure on fraudulent Bank records pertaining to Plaintiff

Loan due to illegitimate LPI and fees and charges that loaded Plaintiff monthly payments amount

with fraudulent charges which Chase Bank used to file Foreclosure.

221.    Plaintiff asserts that the Foreclosure Complaint Chase Bank filed showed three different

amounts due and owing; paragraph 10. Claims, "… *due and owing the principal sum of*

*$263,431.29,* together with all sums that may be due for interest, taxes, insurance, escrow advances,

and fees for inspecting property, filing fees, recording fees, title search, examination fee, service of

process…allowed by the Court…". Also filed was a 'fill in the blanks verified complaint for

foreclosure', also dated January 28, 2013, that *Plaintiff owed $273,826.22.*  However, the 09/17/13

Chase Bank adjustable mortgage letter states the *principal balance is $240.722.33,* and the new rate

is 3.043% and new P & I is $1,341.44. Three different amounts due? Chase produced no

verification of the principal balance or escrow or fees, or any amount. An accounting is necessary to

discover why the three different amounts due.

222.    Loan documentation is complex and Chase Bank is either inept or callous in complying with

their own notice requirements or notices required by state or federal law.

223.    The Loan documents were written and prepared by Defendant and are skewed in favor of the

Defendant and against Plaintiff. Even if Plaintiff wanted to make changes in the Loan documents

Plaintiff does not have the clout to make changes, even if Plaintiff catches an obvious error.

224.    Mistakes, Errors or intentional concealment makes the difference for Plaintiff to save or loose her Property to Foreclosure. Correcting errors in accounting is time consuming to Lenders and most representatives Plaintiff spoke to concerning accounting errors did not want to take the time to investigate Plaintiff's concerns and complaints and either transferred Plaintiff to another Department, put Plaintiff on an extended Hold, or 'disconnected' Plaintiff. It is crucial to correct errors and mistakes in accounting by Defendant so Defendant does not financially or emotionally damage Plaintiff.

225.    Some accounting errors occur when a Loan is transferred from one lender to another and the new servicer may not have accurate and updated payment records and uses bad accounting. During the Deposition on April 12, 2016 of a Caliber employee, Serge Alexis, Default Supervising Officer, he admitted when a loan is 'boarded' from a prior lender, there are errors and mistakes carried from one lender to the successor lender and some may not be caught.

226.    Errors or intentional concealment by Defendant of their financial statements, of fraudulent added LPI and fees, billing fraud, wrongful foreclosure and billing discrepancies and charges detrimentally affected Plaintiff and damaged Plaintiff. Accounting errors must be discovered and Plaintiff must have restitution and refund of money lost.

227.    Plaintiff proposes that, for justice, good process should include the articulation of and accounting and guidelines that will shape and constrain Defendants discretionary decisions to protect Plaintiff and future Borrowers.

228.    As a result of fraudulent accounting and errors and concealment of LPI and fees and charges, Plaintiff has been damaged.


**SEVENTH CAUSE OF ACTION- WRONGFUL FORECLOSURE**
**CHASE BANK**

229.    Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through 228, as if delineated here in extenso.

230.   Plaintiff asserts a claim for wrongful Foreclosure as the Foreclosure was conducted negligently and in bad faith and the Defendant did not have standing to file the claim.

231.   Plaintiff asserts that even though Chase Bank's Motion to Dismiss was Allowed, Plaintiff still suffered damages as a result of the Foreclosure action, such as loss of enjoyment of the Property to use for fear Defendant would send a sheriff to remove Plaintiff; Loss of economic benefit from rental income because fears for renters would be removed by a sheriff if foreclosure was ordered. This is real because after Defendant filed for foreclosure, Defendant served a foreclosure summons on two of Plaintiff's older female renters who answered the door at the Property; Plaintiff was damaged by the amount she paid for attorneys to defend the Foreclosure and, Plaintiff had to pay travel expenses to travel to Florida from Massachusetts for Court Events; Defendant added Attorney fees, Court appearance fees, Corporate fees, late fees, Drive by fees; LPI and many more fees and charges to Plaintiff Loan, exponentially creating a fraudulent and artificially inflated Principal Balance of over $333,000.00 when 18 years earlier Plaintiff initial Loan was for $294,300.00, and many more damages that occurred as a result of the foreclosure.

232.   Plaintiff asserts that Defendant did not have standing to file foreclosure when Defendant filed the Complaint.

233.   Standing may be established by either an assignment or an equitable transfer of the mortgage prior to the filing of the complaint. *See WM Specialty Mortg., LLC v. Salomon*, 874 So.2d 680, 682–83 (Fla. 4th DCA 2004).

234.   "A plaintiff's lack of standing at the inception of the case is not a defect that may be cured by the acquisition of standing after the case is filed and cannot be established retroactively by acquiring standing to file a lawsuit after the fact." *LaFrance v. U.S. Bank Nat'l Ass'n*, 141 So. 3d 754, 756 (Fla. 4th DCA 2014)

235.   "If the note does not name the Plaintiff as the payee, the note must bear a special endorsement in favor of the plaintiff or a blank endorsement." *Sosa v. U.S. Bank Nat'l Ass'n*, 153

So. 3d 950, 951 (Fla. 4th DCA 2014). The plaintiff may also show "an affidavit of ownership to prove its status as a holder of the note." Id.; see *Sosa v. U.S. Bank Nat'l Ass'n*, 153 So. 3d 950, 951 (Fla. 4th DCA 2014). "A plaintiff alleging standing as a holder must prove it is a holder of the note and mortgage both as of the time of trial and also that [it] had standing as of the time the foreclosure complaint was filed." *Kiefert v. Nationstar Mortg.*, LLC, 153 So. 3d 351, 352 (Fla. 1st DCA 2014).

236.   Under article 3 of the Uniform Commercial Code (UCC), F.S. Ch. 673, the foreclosing plaintiff must present admissible evidence that it holds the note or has the rights of a holder.

237.   On January 28, 2013, Chase Bank filed a Foreclosure action on Mortgage for unit 303 of the Sand Caper, 6900 Estero Blve, Fort Myers Beach, Florida, and also filed against two elderly renters in the condominium, who are neither related nor have any interest in the Property in Lee County Florida.

238.   The Original Complaint, in paragraph 3 stated, "Plaintiff is the holder of the Note which is endorsed in blank". However, Plaintiff did not attach a copy of the Note endorsed in blank. The Complaint does not provide a date that the "Note' was endorsed in Blank. There is no indication that the Note was the Original Note, which is required. The Original Note or Note endorsed in Blank, and Original Mortgage was not filed with either the Original Complaint or the Amended Complaint.

239.   On January 28, 2013, the day Chase Bank filed the Foreclosure Complaint, Chase Bank did not have Standing to file a Foreclosure against Plaintiff.  The FDIC did not execute an Assignment of Mortgage until 11/3/2014 at and recorded on 11/14/2014 12:50 pm. Then, on 11/3/2014 and recorded on 11/14/2014 at 12:50 PM, Chase Bank Assigned the Mortgage to US Bank Trust, NA as Trustee for LSF9 Master Participation Trust", with Loan Servicer Caliber. An assignee of a mortgage has statutory standing to foreclose under Florida. S. §701.01.

240.   On 10/25/2013, Chase Bank filed an "Amended Verified Mortgage Foreclosure Complaint". The Amended Complaint contained an attachment Exhibit A, Certification of Note Possession

signed by Alma Santos as, "Document Custodian of Albertelli Law," which stated, "I personally

reviewed the collateral file at 5404 Cypress Center Dr., Tampa, Fl, that was provided to Albertilli

Law for purposes of its representation of JP Morgan Chase Bank. ...I confirm that the collateral file

contained the original promissory note, and attached is correct copy of original promissory note...".

The "Certification" does not state that Plaintiff was holder of the original note, or a note endorsed in

blank when Plaintiff filed the Original Complaint.  The Original Note was not filed with the Court

either on January 28, 2013 or on 10/25/2013. There is no indication that on January 29, 2013,

Plaintiff was in possession of the "Original Promissory Note", or of a Note endorsed in Blank. The

Custodian does note state the Original Note had a Blank Endorsement.

241.    Defendant Chase Bank never gave Plaintiff written notice of The Assignment of Mortgage

to Chase, or a written Notice that Plaintiff ever filed the Original Note or Note endorsed in Blank

with the Court. Plaintiff learned about the Assignment of Mortgage when, in Court, at a much later

date than Defendant handed the Assignment to Plaintiff on or about at a Trial in 2016.

242. On 11/3/2014 and recorded on 11/14/2014 at 12:50 PM, Chase Bank Assigned the Mortgage to

US Bank Trust, NA as Trustee for LSF9 Master Participation Trust", with Loan Servicer Caliber.

243.    Chase Bank never filed a Motion to Substitute 'US Bank Trust, NA as Trustee for LSF9

Master Participation Trust", as the Plaintiff in the Foreclosure Action.

244.    The Servicer, Caliber, for 'US Bank Trust, NA as Trustee for LSF9 Master Participation

Trust", appeared by counsel at all court appearances and at the Deposition of the Foreclosure Action

in April 2016.

245.    Caliber, as Servicer, was not the owner or holder of the Original Note or Mortgage, and did

not have standing to continue prosecution of the foreclosure.

246.    *Williams* does suggest that a borrower can state a claim for wrongful foreclosure where the

foreclosure was executed negligently and Budrow has sufficiently alleged a negligent foreclosure.

…this Court is persuaded that borrower may nonetheless have damages from the foreclosure for which the rescission does not fully compensate him. *Williams,* 357 So.2d at 936.

247.    On 06/19/2018, Chase Bank filed a Motion to Dismiss and The Honorable Elizabeth Krier at the Circuit Court for Lee County Ordered Chase Bank's Motion to Dismiss Cause of Action.

248.    Wherefore, Budrow asks this court to find that neither Chase Bank or Caliber had standing to pursue the Foreclosure action in Court against Budrow.

249.    As a result, Plaintiff suffered financial and emotional damages.

250.    Budrow requests that any and all costs charged to Plaintiff's Loan in association with the Foreclosure action, either as fees and charges to the Loan, and any and all costs incurred to Budrow in defense of this claim be awarded to Budrow.

**EIGHTH CAUSE OF ACTION- Mass. Gen. Laws C. 93A**
**CHASE BANK**

251.    Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through -
        250, as if delineated here in extenso.

252.    Plaintiff asserts a claim under M.G.L.c Chapter 93A makes it unlawful for a party to engage in an "unfair method of competition" or an "unfair or deceptive act or practices."

253.    In a M.G.L.c. 93A letters dated February 21, 2013 and October 16, 2918, Plaintiff wrote to Chase Bank explaining the unfair and wrongful charges for forced-placed insurance and fees and charges.

254.    Defendant knowingly and recklessly and/or intentionally breached and engaged and acted in an ongoing and a continuous pattern unfair deceptive act(s) and or practice(s) which occurred to Plaintiff as a consequence of Mortgage contract.

255.    Defendant owed a duty to give Plaintiff written notice of the (i) acceleration of the Mortgage; (ii) addition of LPI and fees and charges; and (iii) allowing a loan modification when faced with a hardship or foreclosure. (iv) filing of a judicial action of foreclosure to provide Plaintiff an opportunity to take corrective actions.

48

256. Defendant breached the Mortgage by adding LPI with knowledge that there was a clause in the Mortgage that, 'Condo Association, Condominium Covenants. B. Property Insurance' said: 'So long as the Owners Association, with a generally accepted insurance carrier, a "Master" or "Blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, *hazards* included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and *floods,* from which the Lender requires insurance, then: (i) Lender waives the provision in Section 3 Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 6 to maintain the property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy;

257.   Defendant further breached the Mortgage Contract, by, and when Defendant:
   A Actively Concealed the addition of fraudulent LPI without a reasonable basis and with Knowledge Plaintiff had both Condominium and Private Insurance.
   B. Failing to Refund LPI to Plaintiff in a timely manner or not at all
   C. Failing to provide Plaintiff the ability to Modify Loan in a timely manner
   D. Failing to respond to verbal requests and correspondence in a timely manner;
   E. Failing to properly and timely adjust this case consistent with insurance industry standards;
   F. Failing to provide any reasonable basis for denying a loan modification and hardship modification on this claim;
   G. Failing to meet its duty owed to plaintiff to engage in good faith and fair dealings;
   H. Defendant actively concealed fraudulent charged LPI and fees and charges from 2009 through 2104 when Caliber became the Servicer. Charges and Fees added were at the pure discretion of Defendant and amounted to thousands of fees and charges in a pattern year to year. An April 19, 2013 WaMu /Chase Loan History from, 12/31/2003 to 04/19/2013, revealed multiple fees and charges and forced-placed insurance, *Either not disclosed or* not *revealed and actively concealed* to Plaintiff for a Total of charges in the amount of $79,252.51 (¶85 Complaint)– unexplained and illegitimate charges to Plaintiff Loan, exponentially increasing or increasing quickly by large amounts the Principal Balance Plaintiff owed on the Loan.
   I.   An example of unchecked charges is in History of Account Optional Fee Charges for years 2011 – 2017 showing multiple fees for "pp-inspection exterior at $14 per inspection multiple times; FCL Broker price opinions at $78 multiple times and FCL attorney costs at $250 to $1400, and court fees at $151 to $1182.50, and corp advances $15 all charges are charged multiple times and never disclosed  and actively concealed from  Plaintiff, but for Plaintiff asking for a Pay History.  In a 'Chase Detailed Transaction History' from 2010 to 2014, there are multiple charges and fees ranging

from $14.00 to $6,673.74, mostly without any explanation and never revealed to Plaintiff and actively concealed to Plaintiff.

J.   Chase Bank failed give any details or written description what was and was not refunded.

K.   Defendant knowingly and for an improper purpose of financial gain, or by improper means induced and coerced Plaintiff, while Plaintiff was under stress of a foreclosure, filed a foreclosure action in court, concurrently Defendant continued to add fraudulent charges for LPI and Fees and Charges amounting to an exorbitant high Principal Balance and monthly mortgage payments.

L.   Defendant Failed to provide Plaintiff with an accounting of how the Foreclosure amounts in 2013, when Foreclosure was filed, were calculated over $273,000.00 alleged outstanding. Not adding up is that eighteen years earlier in 2003, plaintiff purchased the loan for $294,300.00. Plaintiff paid the monthly Loan payments for eighteen years and, in 2017, Defendant unilaterally and arbitrarily without any accountability for the amount alleged Plaintiff owed over $273,000.00.

M.   Defendant kept the Foreclosure action open to give leverage to Caliber when Caliber agreed to a Loss Mitigation and in a one-sided agreement, in favor of Caliber, coerced Plaintiff to sign a Loss mitigation for over $333,000.00 with a Balloon Payment of $75,000.00 a few years after Loss Mitigation was in effect.
within 15 days.

N.   Defendant fraudulent filed for Foreclosure with knowledge Chase did not have an Assignment of the Mortgage and therefore no Standing to File the Foreclosure action.

258.   Defendant owed a 'duty" to Plaintiff under the Contract not to add LPI without a reasonable

basis and only if Plaintiff did not have insurance. Plaintiff sent Defendant proof of insurance from

both the Condominium hazard insurance, and Plaintiff private insurance upon request of Defendant.

Defendant beached the Mortgage because the Defendant had  knowledge Plaintiff had insurance,

irregardless, Defendant actively concealed charges of  LPI premiums to Loan multiple times for

multiple years, with added fees and charges, which in turn skyrocketed the Principal Balance due to

an exorbitant amount , which led to  Defendant filing for foreclosure in Court to take the Property.

259.   Defendant's unfair methods of competition and unfair or deceptive business practices were

unlawful.

260.   As a consequence of that Mortgage Contract, at all times relevant hereto, Plaintiff is entitled,

from Defendant, fair, competent, and accurate handling of Loan and all aspects pertaining to

servicing and collection aspects of Lender and Servicer of Loan. Defendant debt collecting and

servicing of Plaintiff mortgage and loan, was knowingly and recklessly, willfully, and intentionally

mishandled as set forth in this Cause of Action and Complaint and Facts, and Defendant violated

and breached each claim made in each count.

261.    As a result of the Defendant unfair and deceptive conduct and actions, the Plaintiff has been damaged and Plaintiff is entitled to damages, including treble damages, costs, and her reasonable attorney fees. The court may award up to treble damages upon a showing that the Defendant's conduct was knowing or willful.

## NINTH CAUSE OF ACTION- BREACH OF CONTRACT CALIBER

262.    Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through - 161, as if delineated here in extenso.

263.    On August 28, 2014, *U.S. Bank Trust, N.A as Trustee for LSF9 Master Participation Trust* ('US Bank') bought Mortgage from Chase Bank..

264.    On August 28, 2014, *Caliber Home Loans, Inc., ('* Caliber') was Servicer to owner U.S. Bank and was authorized to handle routine inquiries and requests regarding Budrow's loan. On August 1, 2018 the servicing of mortgage loan was transferred to Shellpoint Mortgage Servicing ("Shellpoint").

265.    Plaintiff mailed future mortgage payments to Caliber at the address on the Caliber Monthly Mortgage Statement.

266.    Defendant broke, or breached the Mortgage Contract by the following actions.

267.    Mortgage paragraph 15 (Notice);paragraph 20, (Notice of Grievance); paragraph 5 (Property Insurance) Defendant Breached, " Neither Borrower not Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has *breached any provision of, or any duty owed by reason of, this Security Instrument*, until such Borrower or *Lender has notified the other party* (with such *notice given in compliance* with the requirement is of Section 15 of such alleged breach and afforded the other party hereto a reasonable

period after the giving of such notice to take corrective action….the notice of acceleration and

opportunity to cure be given to Borrower pursuant to Section 22 and the notice of acceleration given

to borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take

corrective action provisions of this Section 20.

268.    Defendant breached the Mortgage (i) did not provide Plaintiff a written notice of an

Acceleration of the Note and Mortgage, and, (ii) added illegitimate fraudulent lender-placed

insurance on Loan without proper written notice and without a reasonable basis with knowledge

that the Mortgage clause Condominium provide hazard and flood insurance and Plaintiff provide

proof of private Wind and content Insurance; and; (iii) did not provide Plaintiff an opportunity to

take correction action of Loss Mitigation or an Accounting of prior Lender file transferred to

Caliber, before Defendant continued the judicial action for foreclosure that Chase Bank filed, (iv)

Defendant continued the Foreclosure Action in Court despite the fact that Chase Bank never filed a

Motion to Substitute Caliber for Chase Bank as a Plaintiff, and, Caliber did not have standing

because Caliber was not the owner or holder of the Original Note and Mortgage, and, (v) Defendant

due to addition of fraudulent LPI and Fees and charges and court fees and charges exponentially

fraudulently increased Plaintiff Principal Balance, and Monthly Mortgage Payments, and (vi),

Defendant applied coercion and undue influence and emotional stress to Plaintiff

when Defendant forced Plaintiff to agree to the unilateral terms of the boiler plate Loss Mitigation

agreement or be foreclosed on in the pending Foreclosure case, or, face the alternative nightmare,

that Defendant continue unchecked to keep adding more and more fraudulent LPI and fees and

charges, just because they could, without any recourse, which led the principal balance to rise

higher and higher into debt, and closer and closer to foreclosure. Defendant only gave Plaintiff, "15

days to sign and 'deliver' to Defendant".

269.    The April 19, 2013 WaMu /Chase/Caliber Loan History from, 12/31/2003 to 04/19/2013,

revealed multiple fees and charges and forced-placed insurance, *Either not disclosed or* not

*revealed and actively concealed* to Plaintiff for a Total of charges in the amount of $79,252.51 (¶85

Complaint)– unexplained and illegitimate and fraudulent charges to Plaintiff Loan, exponentially

increasing or increasing quickly by large amounts the Principal Balance Plaintiff owed on the

Loan.

270.     An example of unchecked charges appears in Caliber's History of Account Optional Fee

Charges for years 2011–2017 showing multiple fees for "pp-inspection exterior at $14 per

inspection multiple times; FCL Broker price opinions at $78 multiple times and FCL attorney costs

at $250 to $1400, and court fees at $151 to $1182.50, and corp advances $15 all charges are charged

multiple times and never disclosed and actively concealed from Plaintiff, but for Plaintiff asking for

a Pay History.  In a 'Chase Detailed Transaction History' from 2010 to 2014, there are multiple

charges and fees ranging from $14.00 to $6,673.74, mostly without any explanation and never

revealed to Plaintiff and actively concealed to Plaintiff. The above charges do not appear in the

Monthly Mortgage Statements sent to Plaintiff. Plaintiff had to request a Pay history to see all

concealed charges to Loan.

271.     Defendant failed give any details or information or misinformation or written description

explaining if any charges were refunded.

272.     Defendant Failed to provide Plaintiff an accounting of how the Loan Modification numbers

for the Principal Balance which included LPI, principal balance, escrow, charges, fees, were

calculated over $333,000.00 in year 2017, when in year 2003 the Loan balance was $294,000.00

and, Plaintiff paid the monthly Loan payments for eighteen years and, in 2017, Defendant

unilaterally and arbitrarily without any accountability for the amount of the Loan Modification in

2017 arbitrarily the Principal Balance due was $333,000.00

273.     Defendants knowingly and for an improper purpose of financial gain, or by improper means

induced and coerced Plaintiff, while Plaintiff was under emotional distress of a foreclosure court

case about to foreclose on Property, and or stay in present situation where Defendant arbitrarily, and

without any accountability added LPI, fees and charges whenever and however Defendant wanted, signed a Loan Modification under unilateral terms of Defendant

274.   Plaintiff was against a wall and was forced to enter into or continue a business relationship and mitigation or lose the Property to Foreclosure which was pending in Circuit of Lee County, Florida, or stay in original Loan and Defendant continue to add LPI without any accountability other than they can.

275.   Defendant fraudulently continued Foreclosure on Loan, pending in Court filed by Chase Bank, despite the fact that Caliber was not a name Plaintiff or party to the Foreclosure Action and not a owner of the Mortgage, and did not have standing to continue the Foreclosure.

276.   Plaintiff felt pressured to enter into the Loss mitigation transaction that ultimately benefits the bank, and the bank used inaccurate information, and fraudulently concealed relevant information, to achieve this objective.

277.   Plaintiff was emotionally distressed over all of the actions by Defendant as it concerns the Loan.

278.   As a result Plaintiff was damaged.

## TENTH CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION
## CALIBER

279.   Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through 278, as if delineated here in extenso.

280.   Defendant further breached Mortgage contract and/or negligently misrepresented and or actively concealed the following Defendant actions to Plaintiff:

281.   Defendant Failed to give Proper Written Notice of illegitimate charges and did not have a reasonable basis to add LPI;

282.   Defendant actively concealed the addition of illegitimate LPI with knowledge

Plaintiff Mortgage had a clause for Condominium insurance and Plaintiff gave proof of Private Insurance.

283.    Defendant Failed to Refund fraudulent LPI and fees and charges to Plaintiff in a timely manner or not at all.

284.    Defendant Failed to provide Plaintiff the ability to Modify Loan in a timely manner and to Failed to provide an accounting to Modify Loan with correct and accurate numbers.

285.    Defendant Failed to respond to verbal requests and correspondence in a timely manner;

286.    Defendant Failed to properly and timely adjust this case consistent with insurance industry standards;

287.    Defendant Failed to provide any reasonable basis for denying a loan modification and hardship modification on this claim after Plaintiff for years provided multiple documents to Defendant, until after Plaintiff Deposed a Caliber employee.

288.    Defendant Failed to meet its duty owed to Plaintiff to engage in good faith and fair dealings;

289.    Defendant continued to actively mislead, and actively conceal each and every time LPI was illegitimately added, along with fees and charges, at the pure discretion of Defendant. An April 19, 2013 WaMu /Chase Loan History from, 12/31/2003 to 04/19/2013, revealed multiple fees and charges and forced-placed insurance, *Either not disclosed or* not *revealed and actively concealed* to Plaintiff for a Total of charges in the amount of $79,252.51 (¶85 Complaint) – unexplained and illegitimate charges to Plaintiff Loan, exponentially increasing or increasing quickly by large amounts the Principal Balance Plaintiff owed on the Loan.

290.    Caliber's History of Account Optional Fee Charges for years 2011 – 2017 revealed multiple fees actively concealed because they were not accounted for on Monthly Mortgage Statements for "pp-inspection exterior at $14 per inspection multiple times; FCL Broker price opinions at $78 multiple times and FCL attorney costs at $250 to $1400, and court fees at $151 to $1182.50, and corp advances $15 all charges are charged multiple times and never disclosed and actively

concealed from Plaintiff, but for Plaintiff asking for a Pay History. In a 'Chase Detailed Transaction History' from 2010 to 2014, there are multiple charges and fees ranging from $14.00 to $6,673.74, mostly without any explanation and never revealed to Plaintiff and actively concealed to Plaintiff.

291.    Defendant failed to give any details or written description what was and was not refunded.

292.    Defendant Failed to provide Plaintiff an accounting of how the Loan Modification numbers for the principal balance, inclusive of LPI, escrow, charges, fees, were calculated over $333,000.00 in 2017, when in year 2003 the Loan balance was $294,000.00 and, Plaintiff paid the monthly Loan payments for eighteen years and, in 2017, Defendant unilaterally and arbitrarily without any accountability for the amount of the Loan Modification in 2017 arbitrarily charged Plaintiff with a Principal Balance due of $333,000.00?

293.    Defendant knowingly and for an improper purpose of financial gain, or by improper means induced and coerced Plaintiff, while Plaintiff was under stress of a foreclosure court case about to foreclose on Property, and or stay in present situation where Defendant arbitrarily, and without any accountability added LPI, fees and charges whenever and however Defendant wanted, signed a Loan Modification under unilateral terms of Defendant

294.    Plaintiff was against a wall and was forced to enter into or continue a business relationship and mitigation or lose the Property to Foreclosure which was pending in Circuit of Lee County, Florida, or stay in original Loan and Defendant continue to add LPI without any accountability other than they can!

295.    Defendant applied coercion and undue influence and force Plaintiff to agree to the terms of the boiler plate unilateral Mitigation agreement giving Plaintiff with only '15 days to sign and deliver to Defendant", or lose Property to Foreclosure which was pending in Court filed by Chase Bank, or the other alternative to have Defendant keep adding more and more LPI and fees and charges, just because they could without any recourse, to Loan, forcing Plaintiff principal balance

to rise higher and higher into debt, and closer and closer to foreclosure unless Plaintiff agreed to the terms of the Loss Mitigation within 15 days.

296.    Defendants autonomy in adding LPI, fees and charges Defendants decisions must be constrained and accounted to Plaintiff.

297.    As a result, Plaintiff suffered financial and emotional damage.

## ELEVENTH CAUSE OF ACTION:  UNJUST ENRICHMENT
## CALIBER

298.    Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through - 297, as if delineated here in extenso.

299.    Defendant received a financial benefit when, at Defendant's discretion, and unaccountability, continually illegally to add LPI, fees and charges, of over $75,000,00, on Plaintiff loan, now due and payable in a balloon payment.

300.    Defendant realized a financial gain from the LPI, fees and charges, but also wanted to foreclose on Plaintiff loan to gain the Property and more financial benefits.

301.    Despite realizing substantial premium from plaintiff Loan, Defendant withheld the LPI proceeds owed to plaintiff for the payments of illegitimate LPI, and, Defendant continued the foreclosure filed by Chase Bank against the Property, and without proper standing to continue as Chase Bank, to gain more payments, and, unilaterally prepared a Mitigation agreement that conferred on Defendant over $75,000.00 of illegitimate LPI, and irreparable harm to Plaintiff and breach in the bargaining process being one-sided to Defendant only and unfair to Plaintiff.

302.    Plaintiff contributed substantially to the Mortgage in 2003 which started at $194,300.00 and, for over 18 years Plaintiff paid Monthly payments to Defendant, and, without legitimate reasons Defendant added LPI, fees and charges, referred Loan to foreclosure, and then denied Plaintiff a loan modification for years and years, and finally, only after Plaintiff took the deposition of Defendant in the Foreclosure action, did Defendant agree to a modification, but only on their terms.

Defendant did not allow Plaintiff a seat at the negotiating table or to have any input in contract negotiations, and Defendant unilaterally decided the terms of the 'modification', which, in reality, was not a 'modification' but more of the same illegal money grab for Defendant, and another day of Plaintiff's 'contributions' to the financial wealth of Defendants, in over $333,000.00, which included a balloon payment in the amount of almost $75,000 after a few years to Defendant.

303.    Acceptance or retention by the Defendant of the valuable benefit under the circumstances is and would be inequitable without payment for its value to Plaintiff.

304.    Defendant had an advantage as a large financial institution, that has a measurable value, including the advantage of the foreclosure and costs of attorney fees and litigation what was charged to Plaintiff, added LPI, and fees and charges, and a unilateral construction of the Contract for the benefit of the Defendant without Plaintiff being allowed to see how any of the calculations were made to prepare the Mitigation

305.    As a result of Defendant's breach of its duties under the Mortgage, by not providing writing notice to Plaintiff, by illegitimately adding LPI despite knowledge Plaintiff Condominium and Plaintiff provided proof of insurance, by continuing the foreclosure court case, by unilaterally writing the Loss Mitigation Agreement in favor of Defendant, there is an unjust enrichment of one party, the Defendant, and, unjust detriment to another party, the Plaintiff.

306.    The appropriate measure of damages should be an approximation of the value of the benefit Defendant received over 18 years of mortgage payments and interest paid, illegitimate LPI and fees and charges and cost of foreclosure and attorney fees and costs to Plaintiff to defend the foreclosure, and loss rent in her property not being able to rent for fear Defendant would take property and lock out any renters. Defendant, Chase Bank already filed foreclosure unfairly against two renters Plaintiff had in unit.

307.   When a Defendant has received a benefit that is significantly greater than the Plaintiff's loss and justice so requires, "the Defendant may be under a duty to give the Plaintiff the amount by which he has been enriched." Restatement of Restitution § 1 cmt. e.

308.   'Although Massachusetts courts have not squarely considered the availability of profit disgorgement in an unjust enrichment action, we think it likely that they would approve of a disgorgement remedy in the present unjust enrichment context. *Demoulas*, 677 N.E.2d at 196

309.   Defendant has therefore been unjustly enriched at plaintiff's expense310.   As a result Plaintiff is financially and emotionally damaged.

**TWELFTH CAUSE OF ACTION:**
**IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.**
**CALIBER**

311.   Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through - 310, as if delineated here in extenso.

312.   Under the common law of contracts, the obligation of "good faith and fair dealing" is an implied and inescapable term of every agreement. Per the Restatement (Second) of Contracts, §201, "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."

313.   Defendant had a duty under the Mortgage Contract to be fair to the purpose and terms of the Mortgage Contract and not violate the "spirit" of the Contract, and compel fairness.

314.   Defendant actively concealed adding LPI in excessive high premiums, multiple times a year for multiple years, without a reasonable basis, and with knowledge the Mortgage Condominium paragraph provided for hazard and flood insurance and, Plaintiff sent proof of both Condominium and private insurance to Defendant when requested.

315.   At all material times, Defendant negligently and in bad faith failed to refund Plaintiff's Loan of illegitimate LPI Defendant charged to Plaintiff Loan.

316.    At all material times, Defendant negligently, and in bad faith, failed to fairly prepare and negotiate a fair Loss Mitigation agreement with Plaintiff.

317.    Defendant negligently, and in bad faith, failed to speak to Plaintiff about the LPI.

318.    Defendant refused to speak to Plaintiff about the foreclosure and did not provide Plaintiff with a written notice to correct foreclosure, forcing Plaintiff to pay for attorneys to defend her in the foreclosure, and for Plaintiff to pay for travel from Massachusetts to Florida multiple times to appear in Court, and for Plaintiff to be in a constant state of emotional distress over the foreclosure and losing her Property, and distressing over Defendant continually adding LPI and fees and charges without written notice, all which increased her Monthly payment and the principal balance, and despite knowledge Defendant knew Plaintiff had insurance.

319.    Defendant failed to negotiate in good faith with Loss Mitigation and charged Plaintiff unfair and deceptive charges making the cost of the Loss Mitigation at $333,000,00, and higher than the original mortgage eighteen years earlier costing $294,000.00, after Plaintiff paid 18 years of monthly payments to Defendant.

320.    Defendant failed to provide Plaintiff with foreclosure alternatives as required by the Mortgage;

321.    Defendant  "acted with . . . dishonest purpose or conscious wrongdoing necessary for a finding of bad faith or unfair dealing." *Schultz v. Rhode Island Hosp. Trust Nat'l Bank, N.A.*, 94 F.3d 721, 730 (1st Cir. 1996).

322.    Defendant's " …challenged conduct did not conform to the parties' reasonable understanding of performance obligation, as reflected in the overall spirit of the bargain," *Speakman v. Allmerica Financial Life Ins.*, 367 F. Supp. 2d 122, 132 (D.Mass. 2005).

323.    Defendant breached the terms of the Mortgage Contract as described in Cause of Action I, and did not act in any way to correct their errors.

324.    Defendant offered an unfair and deceptive Loss Mitigation agreement with a higher amount for the Principal balance owed than 18 years earlier, and, which contained a balloon payment of $75,000.00 due a few years after the Loss Mitigation Agreement was signed. This loan modification program set Plaintiff up to fail and put her at heightened risk of foreclosure and emotional distress.

325.    Defendant abused the modification process so deceive Plaintiff as to gain an unscrupulous advantage over Plaintiff to foreclose on Plaintiff.

326.    As a result of its misconduct, Defendant is liable to plaintiff for all damages occasioned by its misconduct, specific and general, as well as attorneys' fees, costs, interests.

327.    As a result of Defendant actions, Plaintiff was financially and emotionally damaged.

**THIRTEENTH CAUSE OF ACTION**
**FRAUD**
**CALIBER**

328.    Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through - 327, as if delineated here in extenso.

329.    Plaintiff asserts a claim for common law fraud arising out of Defendants' misstatements and actively concealed actions of

(i) charging Loan with illegitimate and fraudulent LPI despite Plaintiff providing proof of Private hazard and Wind Insurance and with the Condominium Hazard insurance, also a Provision in the Mortgage that the Condominium has hazard and flood insurance for Plaintiff property;

(ii) charging Loan with extravagant fees and charges and actively concealed the fees and charges to Plaintiff to prevent Plaintiff from discovering the illegal and fraudulent fees and charges

(iii) exponentially increasing Plaintiff Monthly Payments and Principal balance with the concealed illegitimate and fraudulent LPI, fees and charges,

(iv) illegally kept Plaintiff loan in foreclosure when Defendant did not have an Assignment of the Mortgage or was holder of the Original Note and was not named in the Foreclosure case as Plaintiff;

(v) Defendant breached Mortgage paragraph 20 and 15, Lender may not commence, join, … to any judicial action that arises from the other party's actions pursuant to this Security Instrument or alleges that the other party *has breached any provision of, or any duty owed* by reason of this Security Instrument, until such Borrower or Lender has notified the other party with such notice of compliance with the requirements of Section 15 [notice in writing] of such alleged breach to take corrective action. Defendant breached the Mortgage as described in Plaintiff First Cause of Action Breach of Contract, Defendant further breached the Mortgage by continuing the judicial action for foreclosure without an Assignment of Title, and actively concealing to Plaintiff that Defendant did was not the owner of the original Mortgage or Note, and did not have Standing to continue the Foreclosure action filed by Chase Bank.

330.    Plaintiff paid her monthly mortgage payment from 2003 to date to Defendant.

331.    Defendant, under the Mortgage Contract paragraph 5, had a legal right, "If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage." However, Defendant is also aware under the Mortgage Contract pertaining to the Condominium had hazard and flood insurance for Property. 'Condo Association, Condominium Covenants. B. Property Insurance' said: 'So long as the Owners Association, with a generally accepted insurance carrier, a "Master" or "Blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, *hazards* included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and *floods,* from which the Lender requires insurance, then: (i) Lender waives the provision in Section 3 Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 6 to maintain the property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.'

332.    Defendant also had knowledge that the Mortgage paragraph 20, Notice of Grievance,

"Neither Borrower nor Lender may commence, join , or be joined to any judicial action that arises

from the other party's actions pursuant to this Security  Instrument or alleges that the other party

*has breached any provision of, or any duty owed* by reason of this Security Instrument, until such

Borrower or Lender has notified the other party with such notice of compliance with the

requirements of Section 15 [notice in writing]  of such alleged breach to take corrective action, but

actively misled Plaintiff respecting the Plaintiff's cause of actions in Fraud.

333.    Defendant owed a duty under the Mortgage Contract not to breach the Mortgage Contract,

and if Defendant did breach the Mortgage, Defendant was required to notify the Plaintiff in writing

and take corrective action.

334.    Defendant breached the Mortgage and did not provide Plaintiff in writing of the breaches as

described above, and did not take any corrective action to Plaintiff.

335.    Plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting

to uncover the relevant facts. Plaintiff called and called Defendant's representatives and her calls

were disconnected, or transferred, or put on indefinite hold. Plaintiff asked for Payment Histories

because she was in the dark why her monthly mortgage payments were exponentially increasing as

was the Loan Principal Balance.  Defendant gave Plaintiff either no information or misinformation

and actively concealed their actions. The monthly mortgage statements did not disclose all of the

LPI, fees, or charges fraudulently added for fees for foreclosure and attorney fees and drive by

inspection fees, and more.

336.    Plaintiff felt pressured to enter into the Loss mitigation transaction that ultimately benefits

the bank, and the bank used inaccurate information, and fraudulently concealed relevant

information, to achieve this objective.

337.    Defendant induced Plaintiff in the transaction and operated under fraudulent conduct with a

large degree of benefit accruing to the bank of which Plaintiff was unaware. The *Sallee* court

reasoned that where a party to a contract knows that the other is relying on him to furnish all

material facts, the duty is on that party to refrain from concealing such facts. *Sallee v. Fort Knox*

*Nat'l Bank, N.A Sallee* 75 Ohio St.3d 441, 662 N.E.2d 1074 (1996),

338.    Defendant's actions prevented Plaintiff from recognizing the validity of Plaintiff's claims.

Defendant did not give Plaintiff written notice of LPI and fees and charges and Plaintiff relied on

Defendant's concealment in thinking Plaintiff did not have a cause of action.

339.    As a result, Plaintiff suffered financial and emotional damages.

**FOURTEENTH CAUSE OF ACTION – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**CALIBER**

340.    Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through -

339, as if delineated here in extenso.

341.    Plaintiff asserts a claim for common law negligent infliction of emotional distress arising out

of Defendant's actions. Below are facts to support Plaintiff's claim against Defendant.

(i) misstatements of facts and actions by Defendant, and Defendant actively concealing their
actions of fraudulently charging Loan LPI despite Plaintiff providing proof of the Condominium
Hazard insurance and Private insurance
(ii) misstatements and actively concealed actions of addition of LPI, fees and charges, and
excessive principal balance Defendant further breached Mortgage contract and/or negligently
misrepresented and or actively concealed Defendant actions.
(iii) Failing to give Proper Written Notice of charges of illegitimate LPI, fees and charges without a
    Reasonable basis;
(iv) Actively Concealing addition of LPI without a reasonable basis and with knowledge
    Plaintiff had both Condominium and Private Insurance.
(v) Failing to Refund LPI to Plaintiff in a timely manner or not at all
(vi) Failing to provide Plaintiff the ability to Modify Loan in a timely manner
(vii) Failing to respond to verbal requests and correspondence in a timely manner;
(viii) Failing to properly and timely adjust this case consistent with insurance industry
    standards;
(ix) Failing to provide any reasonable basis for denying a loan modification and hardship
    modification on this claim;
(x) Failing to meet its duty owed to plaintiff to engage in good faith and fair dealings;
(xi) Failing to account and mislead, and actively concealed every time LPI was illegitimately added,
fees were added, and charges were added at the pure discretion of Defendant. An April 19, 2013
WaMu /Chase Loan History from, 12/31/2003 to 04/19/2013, revealed multiple fees and charges
and forced-placed insurance, *Either not disclosed or* not *revealed and actively concealed* to Plaintiff
for a Total of charges in the amount of $79,252.51 (¶85 Complaint)– unexplained and illegitimate

charges to Plaintiff Loan, exponentially increasing or increasing quickly by large amounts the Principal Balance Plaintiff owed on the Loan.

(xii) An example of unchecked charges is in Caliber's History of Account Optional Fee Charges for years 2011 – 2017 showing multiple fees for "pp-inspection exterior at $14 per inspection multiple times; FCL Broker price opinions at $78 multiple times and FCL attorney costs at $250 to $1400, and court fees at $151 to $1182.50, and corp advances $15 all charges are charged multiple times and never disclosed  and actively concealed from Plaintiff, but for Plaintiff asking for a Pay History.  In a 'Chase Detailed Transaction History' from 2010 to 2014, there are multiple charges and fees ranging from $14.00 to $6,673.74, mostly without any explanation and never revealed to Plaintiff and actively concealed to Plaintiff.

(xiii) Chase Bank failed give any details or written description what was and was not refunded.

(xiv) Failed to provide Plaintiff an accounting of how the Loan Modification numbers for LPI, principal balance, escrow, charges, fees, were calculated over $333,000.00 in year 2017, when in year 2003 the Loan balance was $294,000.00 and, Plaintiff paid the monthly Loan payments for eighteen years and, in 2017, Defendant unilaterally and arbitrarily without any accountability for the amount of the Loan Modification in 2017 arbitrarily charged Plaintiff with a Principal Balance due of $333,000.00?

(xv) Defendants knowingly and for an improper purpose of financial gain, or by improper means induced and coerced Plaintiff, while Plaintiff was under emotional distress of a foreclosure court case about to foreclose on Property, and or stay in present situation where Defendant arbitrarily, and without any accountability added LPI, fees and charges whenever and however Defendant wanted, signed a Loan Modification under unilateral terms of Defendant

(xvi). Plaintiff was against a wall and was forced to enter into or continue a business relationship and mitigation or lose the Property to Foreclosure which was pending in Circuit of Lee County, Florida, or stay in original Loan and Defendant continue to add LPI without any accountability other than they can!

(xvii). Defendant failed or actively concealed that Defendant did not have proper standing to continue the Foreclosure action as Defendant was not a named party to the Foreclosure and was not the title Holder of the Original Note and Mortgage, but Defendant continued the ruse, or false front, to disguise illicit or forbidden activity.

(xviii) Defendant applied coercion and undue influence and emotional stress to Plaintiff when Defendant forced Plaintiff to agree to the terms of the boiler plate unilateral Mitigation agreement or be foreclosed on in the pending foreclosure case. Defendant only gave Plaintiff '15 days to sign and deliver to Defendant", or lose the Property to Foreclosure which was pending in Court filed by Chase Bank, or, face the other alternative nightmare, to have Defendant, unchecked, keep adding more and more LPI and fees and charges, just because they could without any recourse to Loan, which led to Plaintiff principal balance to rise higher and higher into debt, and closer and closer to foreclosure unless Plaintiff agreed to the terms of the Loss Mitigation within 15 days.

342.     Plaintiff felt pressured to enter into the Loss mitigation transaction that ultimately benefits

the bank, and the bank used inaccurate information, and fraudulently concealed relevant

information, to achieve this objective.

343.     Under Massachusetts law, an agreement is unenforceable on the ground of duress when, "a

party claiming to have entered into a contract under duress has the burden of showing that (1) he

has been the victim of some unlawful or wrongful act or threat; (2) the act or threat deprived him of

his free or unfettered will; and (3) due to the first two factors, he was compelled to make a

disproportionate exchange of values." *Happ v. Corning, Inc.,* 466 F.3d 41, 44 (1st Cir. 2006).

Plaintiff contends she was a victim of the wrongful acts of Caliber; the act deprived her of her free

and unfettered will, and she was compelled to make a disproportionate exchange of values.

344.   Plaintiff was emotionally distressed over all of the actions by Defendant as it concerns the

Loan

345.   Defendant's autonomy and fraudulent actions and decisions of active concealment and

misleading Plaintiff and providing misinformation or no information, and adding illegitimate LPI,

fees and charges and filing foreclosure, must be constrained and accounted to Plaintiff.

346.   As a result, Plaintiff suffered financial and emotional damage.

**FIFTHEENTH CAUSE OF ACTION- ACCOUNTING**
**CALIBER**

347.   Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through -

346, as if delineated here in extenso.

348.   Plaintiff asserts a cause of action for an accounting of any and all transactions on the Loan

from September 24, 2003 to date.

349.  Under Mississippi law, a plaintiff is entitled to an accounting if Plaintiff can show: (1) the

existence of a fiduciary or trust relationship; (2) the complicated character of the accounts; (3) the

need of discovery, *Re/Max Real Estate Partners, Inc. v. Lindsley*, 840 So.2d 709, 712 (Miss. 2003)

(citing *Henry v. Donovan*, 114 So. 482, 484 (Miss. 1927)).

350.   Plaintiff asserts that Defendant had a fiduciary relationship and duty to the Plaintiff under

both the: (i) Mortgage, paragraph 20, "Neither Borrower nor Lender may commence, join, or be

joined to any judicial action that arises from the other party's actions pursuant to this Security

Instrument or alleges that the other party *has breached any provision of, or any duty owed* by reason

of this Security Instrument, until such Borrower or Lender has notified the other party with such

notice of compliance with the requirements of Section 15 [notice in writing] of such alleged breach

to take corrective action, but actively misled Plaintiff respecting the Plaintiff's cause of actions in

Fraud; and  (ii) Common law; the Florida court in *Barnett*, held that the special circumstances in

this case created a *fiduciary relationship* between the customer and the bank, and the bank's failure

to disclose this pertinent information constituted a breach of *that fiduciary duty*.  The court reasoned

that "where a bank having actual knowledge of fraud being perpetrated upon a customer, enters into

a transaction with that customer in furtherance of the fraud," it could be held accountable for the

resulting loss to the customer.  Thus, the fraudulent conduct was the bank's withholding of

information about the company's check kiting scheme, and the benefit was that the bank received

its own loan proceeds check from the company. *Barnett Bank of West Florida v. Hooper, Barnett*

*Bank of West Florida v. Hooper,* 474 So. 2d 1253.

351.    Similarly, the 6th circuit held that the bank was liable for fraudulent

concealment. Specifically, the fraudulent conduct was based on the 'notion that once a bank officer

voluntarily provided information to the purchaser regarding the company's creditworthiness, the

officer also had a duty to disclose the information pertaining to the company's financial

instability.  The bank benefited by its fraudulent conduct because the down payment on the

machinery was used by the company to reduce its debt to the bank.' *Central States Stamping Co. v.*

*Terminal Equipment Co.,* 727 F.2d 1405 (6th Cir. Nos. 82-3166 and 82-3206).

352.    "The *Sallee* case held that a bank may be held liable even in the absence of a *fiduciary*

*relationship* when the customer, usually pressured to enter into a transaction that ultimately benefits

the bank, and the bank uses inaccurate information, or fraudulently conceals relevant information,

to achieve this objective. PNC bank induced Plaintiff in the transaction and operated under

fraudulent conduct with a large degree of benefit accruing to the bank of which Plaintiff is unaware.

The *Sallee* court reasoned that where a party to a contract knows that the other is relying on him to

furnish all material facts, the duty is on that party to refrain from concealing such facts.  In *Sallee,*

the bank acted fraudulently by failing to disclose the prior appraisals, which would have raised the

question of the validity of the final appraisal. And unbeknownst to the customer, the bank received

a benefit from the transaction because the sale of the Laundromat would help the bank by closing on

a nonperforming loan that was under secured, and also because the business would sell for more

than what it was worth.[18] As the *Sallee* case demonstrates, a bank may be held liable even in the

absence of a fiduciary relationship." *Sallee v. Fort Knox Nat'l Bank, N.A Sallee*  75 Ohio St.3d 441,

662 N.E.2d 1074 (1996);

353.    Plaintiff asserts that Caliber and Plaintiff had a fiduciary relationship under the Mortgage

and Common Law cases sited. As a result of Caliber's failure to disclose pertinent information

pertaining to the illegitimate charges of LPI and fees and charges, despite having actual knowledge

Plaintiff had private insurance and Condominium flood and hazard insurance, and filed a

foreclosure action based on their fraudulent actions, and denied a hardship applications for Loss

Mitigation after Plaintiff submitted multiple document to Caliber for constituted a breach of

*fiduciary duty*.  Caliber had actual knowledge of fraud being perpetrated upon Plaintiff, and entered

into transactions with Plaintiff in furtherance of the fraud. Caliber should be held accountable for

the resulting loss to Plaintiff.  The fraudulent conduct was the bank's withholding of information

and providing misinformation and actively concealing illegitimate addition of LPI, fees and charges

despite knowledge of insurance, which added LPI fees and charges increased Plaintiff monthly

payments and principal balance, and Defendant filed foreclosure based on their fraudulent actions

that Caliber concealed from Plaintiff.  The benefit was that the bank received higher loan proceeds

and fees and charges.

354.   Plaintiff further asserts that due to the complicated character of the accounts an accounting is

necessary.  Plaintiff entered into the Mortgage in September 24, 2003 with WaMu. Caliber is a

successor in interest under the Mortgage, and has added multiple charges for LPI, fees, and charges,

and misapplied funds, and not applied mortgage payments, and other accounting functions. The pay

histories Chase Bank covering Caliber's pay history, are complicated and difficult to understand by a lay person. An Accounting is necessary to untangle the complicated Loan history.

355.    Loans are complicated and some Loan documents are lengthy. Lenders and servicers use negotiated or technical defaults as a way of acquiring the property for their own portfolio or generating millions of dollars in default interest and fees. There are many bad faith foreclosures or accelerated demands and an alleged default may not be material.

356.    Plaintiff asserts the need of Accounting Discovery is extremely necessary due the active concealments of Defendant as it pertains to the finances of the Loan. In 2003, Plaintiff principal balance on the Loan was $294,300.00. Plaintiff paid monthly payments for 18 years. In 2017, Defendant now contends Plaintiff owes $333,000.00. It is extremely important that Plaintiff Loan have an expert accountant scrutinize Defendant books pertaining to Plaintiff Loan to find answers why Plaintiff owes more now than in 2003 after Plaintiff paid monthly payments. Also, Plaintiff contends that Chase Bank filed for foreclosure on fraudulent Bank records pertaining to Plaintiff Loan due to illegitimate LPI and fees and charges that loaded Plaintiff monthly payments amount with fraudulent charges which Caliber used to file Foreclosure.

357.    Plaintiff asserts that the Foreclosure Complaint Chase Bank filed showed three different amounts due and owing; paragraph 10. Claims, "… *due and owing the principal sum of $263,431.29,* together with all sums that may be due for interest, taxes, insurance, escrow advances, and fees for inspecting property, filing fees, recording fees, title search, examination fee, service of process…allowed by the Court…". Also filed was a 'fill in the blanks verified complaint for foreclosure', also dated January 28, 2013, that *Plaintiff owed $273,826.22.* However, the 09/17/13 Chase Bank adjustable mortgage letter states the *principal balance is $240.722.33,* and the new rate is 3.043% and new P & I is $1,341.44. Three different amounts due? Chase produced no verification of the principal balance or escrow or fees, or any amount. An accounting is necessary to

discover why the three different amounts due. Caliber has continued the Foreclosure action without being a party to the action and without having standing to sue Plaintiff in Foreclosure.

358.    Loan documentation is complex and Caliber is either inept or callous in complying with their own notice requirements or notices required by state or federal law.


359.    The Loan documents were written and prepared by Defendant and are skewed in favor of the Defendant and against Plaintiff. Even if Plaintiff wanted to make changes in the Loan documents Plaintiff does not have the clout to make changes, even if Plaintiff catches an obvious error.

360.    Mistakes, Errors or intentional concealment makes the difference for Plaintiff to save or loose her Property to Foreclosure. Correcting errors in accounting is time consuming to Lenders and most representatives. Plaintiff spoke to multiple representative of Defendant through the years concerning accounting errors. However, Defendant did not want to take the time to investigate Plaintiff's concerns and complaints and either transferred Plaintiff to another Department, put Plaintiff on an extended Hold, or 'disconnected' Plaintiff. It is crucial to correct errors and mistakes in accounting by Defendant so Defendant does not financially or emotionally damage Plaintiff.

361.    Some accounting errors occur when a Loan is transferred from one lender to another and the new servicer may not have accurate and updated payment records and uses bad accounting. During the Deposition on April 12, 2016 of a Caliber employee, Serge Alexis, Default Supervising Officer, admitted when a loan is 'boarded' from a prior lender, there are errors and mistakes carried from one lender to the successor lender and some may not be caught.

362.    Errors or intentional concealment by Defendant of their financial statements, of fraudulent added LPI and fees, billing fraud, wrongful foreclosure and billing discrepancies and charges detrimentally affected Plaintiff and damaged Plaintiff. Accounting errors must be discovered and Plaintiff must have restitution and refund of money lost.

363.     Plaintiff proposes that, for justice, good process should include the articulation of

and Accounting and guidelines that will shape and constrain Defendants discretionary decisions to

protect Plaintiff and future Borrowers.

364.     As a result of fraudulent Accounting and errors and concealment of LPI and fees and

charges, Plaintiff has been damaged.


## SIXTEENTH CAUSE OF ACTION- WRONGFUL FORECLOSURE
## CALIBER

365.     Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through -

         364, as if delineated here in extenso.

366.     Plaintiff asserts a claim for wrongful Foreclosure as the Foreclosure was conducted

negligently and in bad faith and the Defendant did not have standing to file the claim.

367.     Plaintiff asserts that even though Chase Bank Motion to Dismiss was Allowed, Plaintiff still

suffered damages as a result of the Foreclosure action, such as loss of enjoyment of the Property to

use for fear Defendant would send a sheriff to remove Plaintiff; Loss of economic benefit from

renter income for fear renters would be removed by a sheriff if foreclosure was ordered. This is real

because after Chase Bank filed for foreclosure, Chase Bank served a foreclosure summons on two

of Plaintiff's older female renters who answered the door at the Property; Plaintiff was damaged by

the amount she paid for attorneys to defend the Foreclosure, and, Plaintiff had to pay travel

expenses to travel to Florida from Massachusetts for Court Events; Defendant Caliber had

continued the Foreclosure case and has continued to add Attorney fees, Court appearance fees,

Corporate fees, late fees, Drive by fees; LPI and many more fees and charges to Plaintiff Loan,

exponentially creating a fraudulent and artificially inflated Principal Balance of over $333,000.00

when 18 years earlier Plaintiff initial Loan was for $294,300.00, and many more damages that

occurred as a result of the foreclosure.

368.    Plaintiff asserts that Defendant did not have standing to continue the foreclosure when Caliber became the Servicer for the new owner. Caliber was not the owner of the Original Note or Mortgage. Caliber was not a named party to the action, but continued with the ruse Caliber had a legal right to appear and prosecute the foreclosure action.

369.    Standing may be established by either an assignment or an equitable transfer of the mortgage prior to the filing of the complaint. *See WM Specialty Mortg., LLC v. Salomon,* 874 So.2d 680, 682–83 (Fla. 4th DCA 2004).

370.    "If the note does not name the Plaintiff as the payee, the note must bear a special endorsement in favor of the plaintiff or a blank endorsement." *Sosa v. U.S. Bank Nat'l Ass'n*, 153 So. 3d 950, 951 (Fla. 4th DCA 2014). The plaintiff may also show "an affidavit of ownership to prove its status as a holder of the note." Id.; see *Sosa v. U.S. Bank Nat'l Ass'n*, 153 So. 3d 950, 951 (Fla. 4th DCA 2014). "A plaintiff alleging standing as a holder must prove it is a holder of the note and mortgage both as of the time of trial and also that [it] had standing as of the time the foreclosure complaint was filed." *Kiefert v. Nationstar Mortg.*, LLC, 153 So. 3d 351, 352 (Fla. 1st DCA 2014) (emphasis added).

371.    Under article 3 of the Uniform Commercial Code (UCC), F.S. Ch. 673, the foreclosing plaintiff must present admissible evidence that it holds the note or has the rights of a holder.

372.    On January 28, 2013, the day Chase Bank filed the Foreclosure Complaint, Chase Bank did not have Standing to file a Foreclosure against Plaintiff.  The FDIC did not execute an Assignment of Mortgage until 11/3/2014 at and recorded on 11/14/2014 12:50 pm. Then, on 11/3/2014 and recorded on 11/14/2014 at 12:50 PM, Chase Bank Assigned the Mortgage to US Bank Trust, NA as Trustee for LSF9 Master Participation Trust," with Loan Servicer Caliber. Caliber was not an owner and not a named party to the foreclosure action.

373.    On 11/3/2014 and recorded on 11/14/2014 at 12:50 PM, Chase Bank Assigned the Mortgage to US Bank Trust, NA as Trustee for LSF9 Master Participation Trust", with Loan Servicer Caliber.

374.     Chase Bank never filed a Motion to Substitute 'US Bank Trust, NA as Trustee for LSF9 Master Participation Trust" or Caliber, as the Plaintiff in the Foreclosure Action.

375.     The Servicer, Caliber, appeared by counsel at all court appearances and at the Deposition of the Foreclosure Action in April 2016 without legal rights.

376.     *Williams* does suggest that a borrower can state a claim for wrongful foreclosure where the foreclosure was executed negligently and Budrow has sufficiently alleged a negligent foreclosure.

…this Court is persuaded that borrower may nonetheless have damages from the foreclosure for which the rescission does not fully compensate him. *Williams,* 357 So.2d at 936

377.     Wherefore, Budrow asks this court to find that neither Chase Bank or Caliber had standing to pursue the Foreclosure action in Court against Budrow.

378.     On 06/19/2018, Chase Bank filed a Motion to Dismiss and The Honorable Elizabeth Krier at the Circuit Court for Lee County Ordered Chase Bank's Motion to Dismiss Cause of Action

379.     As a result, Plaintiff suffered financial and emotional damages.

380.     Budrow requests that any and all costs charged to Plaintiff's Loan in association with the Foreclosure action, either as fees and charges to the Loan, and any and all costs incurred to Budrow in defense of this claim be awarded to Budrow.

## SEVENTENTH CAUSE OF ACTION - BREACH OF CONTRACT
## SHELLPOINT

381.     Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through - 380, as if delineated here in extenso.

382.     Plaintiff asserts Shellpoint Mortgaging Servicing, ("Shellpoint"), as of 08/01/2018, is servicer for "UMB Bank, National Association, as legal title trustee of TOCU Title Trust 2017-1". Shellpoint began servicing this loan on or about 08/01/2018, and is responsible for ongoing administration of Plaintiff loan, including receipt of legal notices, receipt and processing of payments, resolution of payment-related issues, and response to any other inquiries regarding

Plaintiff Loan. The new Owner hired Shellpoint to service Plaintiff mortgage and to act as agent for the New Owner, as successor to the original WaMu.

381.    Shellpoint under the Mortgage Contract, owes a *duty* to Plaintiff by reason of the Mortgage Security Instrument, to notify Plaintiff when Lender is not in compliance with the Mortgage and requirements of Section 15 [notice in writing] of alleged breach and then required to take corrective action.

383.    Shellpoint breached the Mortgage Contract and charged Plaintiff an escrow in the amount of $510.54, which included a charge for both county tax and LPI. Taxes for year 2018 were $4,296.08 divided by 12 = $358/ month, but Escrow charge was $510.54 or $152.54 / month for LPI.

384.    Plaintiff put Shellpoint on notice of the breach. The representative told Plaintiff that there was nothing Shellpoint could do because the file came from Caliber with Escrow amounts and an escrow analysis would not be performed until January 2019.  Shellpoint continued to charge Plaintiff the FPI.

385.    In a letter dated January 30, 2019, and June 29, 2019, and July 09. 2019 Plaintiff wrote Shellpoint concerning the LPI. In 2018, Plaintiff sent proof of insurance over four times.

386.    Through many calls and letters and emails, and due diligence, Plaintiff learned that Shellpoint did not handle the insurance.  A company called Proctor Financial, Inc., 5225 Crooks Road, Troy, MI 48098 ('Proctor") handled the Insurance.

387.    In a call with Proctor on June 28, 2019, Proctor asked again for proof of insurance. Plaintiff sent four times in 2018. Proctor told Plaintiff her Loan was placed on an automatic cycle to send out frequent letters asking for insurance, which was more like being on a treadmill trying to keep up with requests for insurance. Proctor advised they would remove loan from automatic cycle.

397.    LPI was not corrected for eleven months from date of first complaint by Plaintiff.

398.    As a result, Plaintiff sustained damages.

**EIGHTH CAUSE OF ACTION- Mass. Gen. Laws C. 93A**
**CALIBER**

399.   Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through -

398, as if delineated here in extenso.

400.   Plaintiff asserts a claim under M.G.L.c Chapter 93A makes it unlawful for a party to engage

in an "unfair method of competition" or an "unfair or deceptive act or practices."

401.   In a M.G.L.c. 93A letters dated February 21, 2013 and October 16, 2018, Plaintiff wrote to

Chase Bank explaining the unfair and wrongful charges for forced-placed insurance and fees and

charges.

402.   Defendant knowingly and recklessly and/or intentionally breached and engaged and acted in

an ongoing and a continuous pattern unfair deceptive act(s) and or practice(s) which occurred to

Plaintiff as a consequence of Mortgage contract.

403.   Defendant owed a duty to give Plaintiff written notice of the (i) acceleration of the

Mortgage; (ii) addition of LPI and fees and charges; and (iii) allowing a loan modification when

faced with a hardship or foreclosure. (iv) filing of a judicial action of foreclosure to provide Plaintiff

an opportunity to take corrective actions.

404.  Defendant breached the Mortgage by adding LPI with knowledge that there was a clause in

the Mortgage that, 'Condo Association, Condominium Covenants. B. Property Insurance' said: 'So

long as the Owners Association, with a generally accepted insurance carrier, a "Master" or

"Blanket" policy on the Condominium Project which is satisfactory to Lender and which provides

insurance coverage in the amounts (including deductible levels), for the periods, and against loss by

fire, *hazards* included within the term "extended coverage," and any other hazards, including, but

not limited to, earthquakes and *floods,* from which the Lender requires insurance, then: (i) Lender

waives the provision in Section 3 Periodic Payment to Lender of the yearly premium installments

for property insurance on the Property; and (ii) Borrower's obligation under Section 6 to maintain

the property insurance coverage on the Property is deemed satisfied to the extent that the required

coverage is provided by the Owners Association policy;

405.   Defendant further breached the Mortgage Contract, by, and when Defendant:
   A   Actively Concealed the addition of fraudulent LPI without a reasonable basis and with
      Knowledge Plaintiff had both Condominium and Private Insurance.
   B.   Failing to Refund LPI to Plaintiff in a timely manner or not at all
   C.   Failing to provide Plaintiff the ability to Modify Loan in a timely manner
   D.   Failing to respond to verbal requests and correspondence in a timely manner;
   E.   Failing to properly and timely adjust this case consistent with insurance industry
      standards;
   F.   Failing to provide any reasonable basis for denying a loan modification and hardship
      modification on this claim;
   G.   Failing to meet its duty owed to plaintiff to engage in good faith and fair dealings;
   H.   Defendant actively concealed fraudulent charged LPI and fees and charges from 2009
      through 2104 when Caliber became the Servicer. Charges and Fees added were at the pure
      discretion of Defendant and amounted to thousands of fees and charges in a pattern year
      to year. An April 19, 2013 WaMu /Chase Loan History from, 12/31/2003
      to 04/19/2013, revealed multiple fees and charges and forced-placed insurance,
      *Either not disclosed or* not *revealed and actively concealed* to Plaintiff for a Total of
      charges in the amount of $79,252.51  (¶85 Complaint)– unexplained and illegitimate
      charges to Plaintiff Loan, exponentially increasing or increasing quickly by large amounts
      the Principal Balance Plaintiff  owed on the Loan.
   O.   An example of unchecked charges is in History of Account Optional Fee Charges for
      years 2011 – 2017 showing multiple fees for "pp-inspection exterior at $14 per
      inspection multiple times; FCL Broker price opinions at $78 multiple times and FCL
      attorney costs at $250 to $1400, and court fees at $151 to $1182.50, and corp advances
      $15 all charges are charged multiple times and never disclosed  and actively concealed
      from  Plaintiff, but for Plaintiff asking for a Pay History.  In a 'Chase Detailed
      Transaction History' from 2010 to 2014, there are multiple charges and fees ranging
      from $14.00 to $6,673.74, mostly without any explanation and never revealed to
      Plaintiff and actively concealed to Plaintiff.
   P.   Chase Bank failed give any details or written description what was and was not
      refunded.
   Q.   Defendant knowingly and for an improper purpose of financial gain, or by improper
      means induced and coerced Plaintiff, while Plaintiff was under stress of a foreclosure,
      filed a foreclosure action in court, concurrently Defendant continued to add fraudulent
      charges for LPI and Fees and Charges amounting to an exorbitant high Principal Balance
      and monthly mortgage payments.
   R.   Defendant Failed to provide Plaintiff with an accounting of how the Foreclosure
      amounts in 2013, when Foreclosure was filed, were calculated over $273,000.00 alleged
      outstanding. Not adding up is that eighteen years earlier in 2003, plaintiff purchased the
      loan for $294,300.00. Plaintiff paid the monthly Loan payments for eighteen years and,
      in 2017, Defendant unilaterally and arbitrarily without any accountability for the amount
      alleged Plaintiff owed over $273,000.00.
   S.   Defendant kept the Foreclosure action open to give leverage to Caliber when Caliber
      agreed to a Loss Mitigation and in a one-sided agreement, in favor of Caliber, coerced
      Plaintiff to sign a Loss mitigation for over $333,000.00 with a Balloon Payment of
      $75,000.00 a few years after Loss Mitigation was in effect.
       within 15 days.

T.   Defendant fraudulent filed for Foreclosure with knowledge Chase did not have an Assignment of the Mortgage and therefore no Standing to File the Foreclosure action.

406.   Defendant owed a 'duty" to Plaintiff under the Contract not to add LPI without a reasonable basis and only if Plaintiff did not have insurance. Plaintiff sent Defendant proof of insurance from both the Condominium hazard insurance, and Plaintiff private insurance upon request of Defendant. Defendant beached the Mortgage because the Defendant had  knowledge Plaintiff had insurance, irregardless, Defendant actively concealed charges of  LPI premiums to Loan multiple times for multiple years, with added fees and charges, which in turn skyrocketed the Principal Balance due to an exorbitant amount , which led to  Defendant filing for foreclosure in Court to take the Property.

407.   Defendant's unfair methods of competition and unfair or deceptive business practices were unlawful.

408.   As a consequence of that Mortgage Contract, at all times relevant hereto, Plaintiff is entitled, from Defendant, fair, competent, and accurate handling of Loan and all aspects pertaining to servicing and collection aspects of Lender and Servicer of Loan. Defendant debt collecting and servicing of Plaintiff mortgage and loan, was knowingly and recklessly, willfully, and intentionally mishandled as set forth in this Cause of Action and Complaint and Facts, and Defendant violated and breached each claim made in each count.

409.   As a result of the Defendant unfair and deceptive conduct and actions, the Plaintiff has been damaged and Plaintiff is entitled to damages, including treble damages, costs, and her reasonable attorney fees. The court may award up to treble damages upon a showing that the Defendant's conduct was knowing or willful.

**EIGHTH CAUSE OF ACTION- Mass. Gen. Laws C. 93A**
**SHELLPOINT**

410.   Plaintiff realleges and reavers each and every allegation contained in Paragraphs 1 through - 409, as if delineated here in extenso.

410     Plaintiff asserts a claim under M.G.L.c Chapter 93A makes it unlawful for a party to engage in an "unfair method of competition" or an "unfair or deceptive act or practices."

411.    In a M.G.L.c. 93A letters dated February 21, 2013 and October 16, 2018, Plaintiff wrote to Chase Bank explaining the unfair and wrongful charges for forced-placed insurance and fees and charges.

412.    Defendant knowingly and recklessly and/or intentionally breached and engaged and acted in an ongoing and a continuous pattern unfair deceptive act(s) and or practice(s) which occurred to Plaintiff as a consequence of Mortgage contract.

413.    Defendant owed a duty to give Plaintiff written notice of the (i) addition of LPI and fees and charges;

414.    Defendant breached the Mortgage by adding LPI with knowledge that there was a clause in the Mortgage that, 'Condo Association, Condominium Covenants. B. Property Insurance' said: 'So long as the Owners Association, with a generally accepted insurance carrier, a "Master" or "Blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, *hazards* included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and *floods,* from which the Lender requires insurance, then: (i) Lender waives the provision in Section 3 Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 6 to maintain the property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy;

415.    Defendant further breached the Mortgage Contract, by, and when Defendant:
A Actively Concealed the addition of fraudulent LPI without a reasonable basis and with Knowledge Plaintiff had both Condominium and Private Insurance.
B. Failing to Refund LPI to Plaintiff in a timely manner or not at all
C. Failing to respond to verbal requests and correspondence in a timely manner;
E. Failing to properly and timely adjust this case consistent with insurance industry standards;
F. Failing to meet its duty owed to plaintiff to engage in good faith and fair dealings;

G. Defendant actively concealed fraudulent charged LPI and fees and charges from 2018 through 2019 when Shellpoint became the Servicer. Charges and Fees added were at the pure discretion of Defendant and amounted to thousands of fees and charges in a pattern year to year.

H. Chase Bank failed give any details or written description what was and was not refunded.

I. Defendant knowingly and for an improper purpose of financial gain.

J. Defendant Failed to provide Plaintiff with an accounting

416.    Defendant owed a 'duty" to Plaintiff under the Contract not to add LPI without a reasonable basis and only if Plaintiff did not have insurance. Plaintiff sent Defendant proof of insurance from both the Condominium hazard insurance, and Plaintiff private insurance upon request of Defendant. Defendant beached the Mortgage because the Defendant had knowledge Plaintiff had insurance, irregardless, Defendant actively concealed charges of LPI premiums to Loan multiple times for multiple years, with added fees and charges, which in turn skyrocketed the Principal Balance due to an exorbitant amount.

417.    Defendant's unfair methods of competition and unfair or deceptive business practices were unlawful.

418.    As a consequence of that Mortgage Contract, at all times relevant hereto, Plaintiff is entitled, from Defendant, fair, competent, and accurate handling of Loan and all aspects pertaining to servicing and collection aspects of Lender and Servicer of Loan. Defendant debt collecting and servicing of Plaintiff mortgage and loan, was knowingly and recklessly, willfully, and intentionally mishandled as set forth in this Cause of Action and Complaint and Facts, and Defendant violated and breached each claim made in each count.

419.    As a result of the Defendant unfair and deceptive conduct and actions, the Plaintiff has been damaged and Plaintiff is entitled to damages, including treble damages, costs, and her reasonable attorney fees. The court may award up to treble damages upon a showing that the Defendant's conduct was knowing or willful.

**PRAYER FOR RELIEF**

Plaintiff, Jean Shea Budrow, demands judgment against Defendants as follows:

(1) Awarding damages sustained by Plaintiffs and caused by Defendants breaches of the Mortgage Contract and the Implied Covenant of Good Faith and Fair Dealing, together with pre-judgment interest;

(2) Finding that Defendants have been unjustly enriched and requiring Defendants to refund all unjust benefits to Plaintiff, together with pre-judgment interest;

(3) Finding of Negligent Infliction of Emotional Distress, together with pre-judgment interest and Awarding such other and further relief the Court deems just and equitable

(4) Finding of Common Law Fraud by Defendants, together with pre-judgment interest, and Awarding such other and further relief the Court deems just and equitable;

(5) Finding that Defendants did not have Standing to File Foreclosure Action an requiring Defendant to refund any and all costs charged to Plaintiff's Loan in association with the Foreclosure action, either as fees and charges to the Loan, and any and all costs incurred to Budrow in defense of this claim be awarded to Budrow, together with pre-judgment interest;

(6) Finding an Accounting of any and all transactions on the Loan from September 24, 2003 to date.

(7) Awarding Plaintiff costs and disbursements and reasonable allowances for the fees of Plaintiff's counsel and experts, and reimbursement of expenses;

(8) Awarding actual damages of $1,000,000 and attorneys' fees and costs;

(9) Awarding actual and, where appropriate, punitive damages sustained by Plaintiff;

(10) Awarding compensatory and treble damages, and attorneys' fees and costs under M.G.L.c. 93A;

(11) Awarding such other and further relief the Court deems just and equitable;

(12) Court costs, expenses, and judicial interest;

(13) Any and all other equitable relief deemed appropriate by this Court

**DEMAND FOR JURY TRIAL** Plaintiff requests a jury trial for any and all Counts for which a trial by jury is permitted by law.

Respectfully submitted, this 13th day of January, 2022.
Attorneys for Plaintiff, Jean Shea Budrow

Jean Shea Budrow, Esquire **WHEREFORE,** Plaintiff, Jean Shea Budrow respectfully prays after due proceedings be had that there be a judgment entered in her favor and against defendants awarding damages, prejudgment interest, post judgment interest, attorney's fees and costs, punitive and/or exemplary damages as may be allowed by law and for further relief as equity and justice require.

JEANSHEALAW
209 Rice Ave
Revere, MA 02151
Cell: 781-454-6239)
Email: jeanshealaw@gmail.com